HELEN STEINER ET AL., PLAINTIFFS-APPELLANTS, v.
MONROE E. STEIN ET AL., DEFENDANTS-RESPOND-
ENTS.

Argued May 23, 1949—Decided June 13, 1949.

*Mr. Herbert J. Hannoch* argued the cause for the appellants (*Messrs. Hannoch & Lasser,* attorneys).

*Mr. Herbert M. Ellend* argued the cause for the respondent Monroe E. Stein.

The opinion of the court was delivered by

VANDERBILT, C. J.   This proceeding brings to us by certification on our own motion two fundamental questions, first, as to the jurisdiction and powers of a Superior Court judge in a cause involving both law and equitable aspects and, secondly, as to the right to a trial by jury in such circumstances.

The complainants were the owners of three-twelfths of the capital stock of The Branford Theatre, Inc., and the defendant Bertha Zucker the owner of two-twelfths, the remaining seven-twelfths belonging to the Stanley Company of America, which was also the tenant of the theatre property in question under a lease expiring June 30, 1947.   By November 1, 1946, the minority stockholders of The Branford Theatre, Inc., had agreed with the Stanley Company on many of the terms of a new lease and they then employed the defendant Monroe E. Stein as their attorney to represent them in closing the matter for an agreed fee, they say, of $3,300.   Stein disputes the alleged agreement, claiming that he was to be paid $3,300 for redrafting a lease theretofore negotiated by them with the Stanley Company, but that the Stanley Company refused to execute the lease so redrafted by him, with the result that the minority stockholders employed him to negotiate a new lease with the Stanley Company, which he did, and to perform various other services, as to all of which no fee was agreed upon.   After the performance of these services the complainants offered to pay the defendant $3,300, which he refused, demanding, the complainants say, $20,000, a demand which the defendant denies making, though he does admit asserting an attorney's lien on the papers of the minority stockholders represented by him, some of which were unrecorded documents.

The complainants filed their bill of complaint in Chancery on November 14, 1947, alleging in addition to the foregoing facts that they required their papers in their endeavor to make a long term mortgage on their interest in the theatre property and the leases thereon and tendering payment of whatever sum might be adjudged due the defendant in order to redeem their papers from the lien asserted by him. On November 26, 1947, the complainants filed a supplemental bill in Chancery, alleging that Stein had rendered a bill of $40,800 for services (in which is included the agreed $3,300) and $173.88 for disbursements and that he had instituted attachment proceedings in the New York Supreme Court under which he had levied on moneys due the minority stockholders under their lease with the Stanley Company, and praying that Stein be restrained from prosecuting his attachment suit in New York. Orders to show cause and an *ad interim* restraint issued on the bill and the supplemental bill and the defendant moved to strike the bill and the supplemental bill on the grounds, first, that the complainants did not allege a demand on the defendant for a statement of services and, secondly, that the complainants had a complete remedy at law. The learned Vice-Chancellor held otherwise, 141 *N. J. Eq.* 478, denying the motion to strike the bills and continuing the restraint against the prosecution of the New York attachment proceedings on terms, the minority stockholders to deposit within 20 days with the Clerk in Chancery $23,000 in cash or their bond conditioned for the payment to Stein of such sum as the Court of Chancery might find to be due him, the defendant Stein then to return to the complainants all their papers and documents and to discontinue the attachment proceedings in New York, the minority stockholders to prosecute the suit in Chancery to final decree and on their failure so to do the defendant to have leave to proceed therewith. The defendant Stein thereupon answered both bills, and in a counterclaim prayed for a decree for $40,973.88 or "such sum as this court may find to be due to this defendant as the reasonable value of his services rendered." He concluded his pleading with a demand for a trial by jury "to determine the amount due

and to be paid to him." The minority stockholders duly answered the counterclaim.

· The first proceeding under the new rules of court, promulgated September 15, 1948, was a petition of the defendant of October 15, 1948, praying "an issue at law may be directed * * * to be framed to the end that a jury hear and determine" the scope of the express agreement between the parties, whether certain services of the defendant Stein were within or without the scope of the express agreement and, if without, to determine the value of such services and award the same as damages. The complainants thereupon sought leave to amend their supplemental bill and their answer to the counterclaim by pleading, first, that the defendant Stein had at no time advised the complainants that he was rendering services which were in his opinion outside of his original agreement for $3,300 or that he expected extra compensation and, secondly, that the acts of the defendant Stein in demanding excessive fees, in stating that unless complainants paid him $20,000 for his services he would assert a claim for a much larger amount, in asserting an attorney's lien on his clients' property in excess of $40,000, in instituting attachment proceedings in New York to collect his fees and in making levies on his clients' property, in attempting to procure a dismissal of the proceedings in Chancery by the use of inaccurate affidavits as to his residence and in offering to release the defendant Zucker from her share of any judgment he might recover in excess of $15,000 if she did not cooperate with the complainants in prosecuting these proceedings, were illegal and oppressive and calculated to bring contempt and disrepute upon the administration of justice in the State of New Jersey, by reason whereof defendant Stein was barred from recovering any compensation for his services. The Chancery Division permitted the amendments sought by the complainants but on its own motion ordered the action transferred to the Law Division for trial under Rule 3:40–3 on the ground that the features of the case requiring equitable intervention had been disposed of. In so doing the learned trial judge added, "It is not to be inferred from this that I accept the argument of

counsel for Stein as to the right of a trial by jury. The conclusion I have reached is independent of that contention." It is this order of transfer which has been certified for review.

## I.

To clarify the respective rights and liabilities of the parties in the pending suit it will be helpful to state briefly what their position would have been before the adoption of the new Constitution and the promulgation of the new rules. The law courts were and still are the forum for suits by attorneys for services rendered and disbursements made on behalf of clients. Such suits are actions for breach of contract and the parties were and are entitled to a trial by jury as of right. *Bolte v. Rainville,* 138 *N. J. Eq.* 508 (*E. & A.* 1946) ; 5 *Am. Jur.* (*Attorneys at Law*), *p.* 378. By reason, however, of the confidential relation of client and attorney and because an attorney's position of trust as an officer of the courts obligates him to the highest standard of fair dealing, equity has long exercised jurisdiction to supervise at the behest of the client an attorney's conduct toward his client. In so doing the Court of Chancery has invoked a variety of remedies ranging from the investigation of the fairness of any agreement between attorney and client to restraining actions at law, threatened or existing, and from revising or cancelling contracts for services to determining the just and reasonable sum due the attorney from his client. *Brown v. Bulkley,* 14 *N. J. Eq.* 451 (*Ch.* 1862) ; *Porter v. Bergen,* 54 *N. J. Eq.* 405 (*E. & A.* 1896) ; *Kelley v. Schwinghammer,* 78 *N. J. Eq.* 437 (*Ch.* 1911) ; *Raimondi v. Bianchi,* 100 *N. J. Eq.* 448 (*Ch.* 1926) ; reversed on other grounds, 102 *N. J. Eq.* 254 (*E. & A.* 1928) ; *Grimm v. Franklin,* 102 *N. J. Eq.* 198 (*Ch.* 1928) ; *Sinisi v. Milton,* 107 *N. J. Eq.* 179 (*E. & A.* 1930) ; *Lewis v. Morgan,* 132 *N. J. Eq.* 343 (*Ch.* 1942) ; *Bolte v. Rainville,* 138 *N. J. Eq.* 508 (*E. & A.* 1946), where the subject is thoroughly canvassed and the cases collated. The only limitation in point of time to the client's invoking the aid of equity is that he must not wait until after he has had his day in a court of law, *Raimondi v. Bianchi,* 102 *N. J. Eq.* 254 (*E. & A.* 1928).

It has long been a cardinal principle of equity that once it has obtained jurisdiction of a cause it will ordinarily dispose of all of the issues to avoid a multiplicity of suits; see *Pettit v. Port Newark National Bank,* 110 *N. J. Eq.* 324 (*Ch.* 1932), where in an action by a stockholder against officers and directors to recover for maladministration and negligence, equity assessed damages for such negligence; *Middlesex Concrete, etc., Corp. v. Northern States Imp. Co.,* 129 *N. J. Eq.* 314 (*E. & A.* 1940), where in a suit for the enforcement of a lien, equity proceeded to assess unliquidated damages; and *Mantell v. International Plastic Harmonica Corp.,* 141 *N. J. Eq.* 379 (*E. & A.* 1947), where in a proceeding for an injunction where injunctive relief became inappropriate *pendente lite,* equity awarded damages for breach of contract. There the court said (141 *N. J. Eq.* 393):

"And Chancery has jurisdiction to assess the damages attributable to the defendant manufacturer's breach of the contract. It is the settled rule that where equity has rightfully assumed jurisdiction over a cause for any purpose, it may ordinarily retain the cause for all purposes, and proceed to a final determination of the entire controversy, and establish purely legal rights and grant legal remedies. *Middlesex Concrete P. & E. Co. v. Northern States Improvement Co.,* 129 *N. J. Eq.* 314; *Pomeroy's Equity Jurisprudence* (5th ed.), secs. 181, 231-242. * * *

"Ordinarily, the jurisdiction of equity is tested by the facts existing at the inception of the suit; and if the complainant is then entitled to equitable relief, equity's jurisdiction to settle all the issues, even though purely legal in nature, and to award damages for the breach of a legal right involved in the suit, will not be defeated by subsequent events which render equitable relief impracticable or unnecessary or unsuitable.· *Rooney v. Weeks,* 290 *Mass.* 18, 194 *N. E. Rep.* 666; *Ricaby v. McCrory Stores Corp.,* 35 *Fed. Rep.* (2d) 14. *Pomeroy's Equity Jurisprudence* (5th ed.), *Sec.* 237e; 30 *C. J. S.* 419, 430; 19 *Am. Jur.* 132. This must necessarily be so, for the rationale of the rule that an equitable feature draws the cause completely within the cognizance of equity is the policy of avoiding 'a multiplicity of suits' *Pomeroy's Equity Jurisprudence* (5th ed.) Secs. 181, 243. For a more extended application of the rule, see cases cited in *Buttinghausen v. Rappeport,* 131 *N. J. Eq.* 252."

The doctrine has been accepted under the new Constitution and the new rules: see *Ebling Brewing Co., Inc., v. Heirloom, Inc.,* 1 *N. J.* 71 (1948), a proceeding for the appointment

of a statutory receiver of an alleged insolvent corporation, where the defendant corporation denied the indebtedness and demanded a jury trial where this court held that it was entirely proper for the Court of Chancery to adjudicate the entire matter and that it was not necessary to refer the action to the Law Division for trial; and also *Fleischer v. James Drug Stores, Inc., et al.*, 1 *N. J.* 138 (1949), in which Mr. Justice Heher said:

> "It is the settled rule that where equity has rightfully assumed jurisdiction over a cause for any purpose, it may retain the cause for all purposes, and proceed to a final determination of the entire controversy and, except where the jurisdiction of equity depends on the prior establishment of a right at law, settle purely legal rights and grant legal remedies. *Mantell v. International Plastic Harmonica Corporation, supra.* When the basis of the jurisdiction is once perceived, its scope and extent become readily apparent. The rationale of the rule that an equitable feature draws the cause completely within the cognizance of equity is the policy of avoiding a multiplicity of suits; and so jurisdiction of the whole controversy may be assumed for the doing of complete justice in the one suit. The constitutional right of trial by jury is, of course, subject to this inherent equitable jurisdiction. Equity has a general jurisdiction to adjudicate ancillary and incidental matters. This jurisdiction is co-extensive with the rights of the parties in the subject matter of the suit. 30 *C. J. S. Equity* (1942), *Section* 67. It may, in the exercise of a sound discretion, do whatever is necessary to a final adjudication of the entire controversy between the parties, whether it encompasses an action *ex delicto* or one *ex contractu.* And it may grant relief to a defendant or between co-defendants. *Ibid, Section* 76. It suffices if the matters to be adjudicated be germane to or grow out of the subject matter of the equitable jurisdiction. There may be a recovery of the damages ensuing from the wrong which calls for equitable relief."

The doctrine that once equity has obtained jurisdiction it will ordinarily dispose of all of the issues has been uniformly applied to suits between clients and attorneys, *Kelley* v. *Schwinghammer,* 78 *N. J. Eq.* 437 (*Ch.* 1911); *Raimondi v. Bianchi,* 100 *N. J. Eq.* 448 (*Ch.* 1926); reversed on other grounds, 102 *N. J. Eq.* 254 (*E. & A.* 1928); *Grimm v. Franklin,* 102 *N. J. Eq.* 198 (*Ch.* 1928). The only seemingly discordant case in this jurisdiction is *Obertelli v. Freeman,* 142 *N. J. Eq.* 235 (*E. & A.* 1948), affirming *per curiam* the opinion of the learned Vice-Chancellor:

"* * * I have no difficulty in deciding that these two agreements were a schocking imposition on complainant [the client], were constructively fraudulent and must be set aside.

"The jurisdiction of Chancery in this suit is based upon fraud leading to the cancellation of the agreement to pay a fee of 50% and a restoration of the fund to the complainant. There is an established principle that when equity takes hold, it will adjudicate the entire controversy and not make business for some other court. But in New Jersey, this principle has not the broad scope it has elsewhere. Freeman demands the judgment of a law court on the reasonable value of his services for the Passeras. His preference will be granted."

An examination of this case discloses that no objection was made by the client to a jury trial, that subsequently the attorney abandoned his preference for a jury trial, and that his fee was in fact determined by the Vice-Chancellor. In these circumstances the case can hardly be taken as authority for remitting the attorney to an action at law. Moreover, in view of the cases above cited, the statement that the principle of doing complete justice has not had the broad scope in New Jersey that it has elsewhere may well be doubted.

It is significant that in none of the cited cases, except the *Obertelli* case, was a jury demanded and in the *Obertelli* case the request for a jury was withdrawn to permit Chancery to dispose of the entire controversy. The law courts were not equipped to give the relief which equity afforded. This ancient head of equity jurisdiction is essential not only to protecting the client but to safeguarding the reputation of the profession for fair dealing. In the present case two distinct equities are successively asserted by the complainants. The first is the right to redeem their documents and papers, some of which are unrecorded instruments affecting the title to real estate, from the burden of the defendant Stein's asserted lawyer's lien of undisclosed amount. The learned Vice-Chancellor properly held that equity had jurisdiction because the complainants had no legal remedy available, the right to redeem at law depended upon a tender of the amount due the lienee, and such tender being impossible when the amount due was uncertain and in dispute. But it is asserted that when the defendant-attorney released his lien and surrendered the documents to his clients on their putting up cash or a bond for $23,000, this equity disappeared. This, however, cannot be

so, for the cash or bond stands in lieu of the lien on the client's documents and the respective rights and liabilities of the parties to the fund in court must be determined before it can be released or the bond surrendered.

The second equity alleged by the complainants is the oppressive conduct of the defendant-attorney toward his clients pleaded in the amendments to the bill of complaint and the supplemental bill, these amendments being entered by leave of court. The direct charge is made not only of oppressive conduct but of bringing contempt on the administration of justice in the State. These are matters which were properly, although not exclusively, within the competence of the Court of Chancery under the facts here present and subject to determination by that court in conjunction with the other issues raised. See *Strong & Sons v. Mundy,* 52 *N. J. Eq.* 833 (*E. & A.* 1894); *Tate v. Field,* 60 *N. J. Eq.* 42 (*Ch.* 1900).

It follows that under our former practice all the issues in this case would have been disposed of in the Court of Chancery without any right of trial by jury.

## II.

The initial question for decision here is where under the new Constitution and new rules the issues of the present case are to be tried and by what judge.

Article VI, section III, paragraphs 3 and 4 of the Constitution provides:

"3. The Superior Court shall be divided into an Appellate Division, a Law Division, and a Chancery Division. Each division shall have such Parts, consist of such number of Judges, and hear such causes, as may be provided by rules of the Supreme Court.

"4. Subject to rules of the Supreme Court, the Law Division and the Chancery Division shall each exercise the powers and functions of the other division when the ends of justice so require, and legal and equitable relief shall be granted in any cause so that all matters in controversy between the parties may be *completely determined*."

The Rules of Court are designed to implement the clear purpose of the framers of the Constitution. The first sentence of *Rule* 3:40–2 states the general principle:

"All actions which were on September 14, 1948, maintainable in the Court of Chancery or before the Chancellor, or in the Prerogative Court or before the Ordinary, shall be brought in the Chancery Division, and all other actions in the Superior Court shall be brought in the Law Division."

And the last sentence of the rule is designed to remove any lingering doubt as to the power and duty of a judge of the Superior Court sitting in the Chancery Division to give legal relief in appropriate cases agreeably to the decisions heretofore cited:

"If the primary right of the plaintiff is equitable or the principal relief sought is equitable, the action is to be brought in the Chancery Division, even though legal relief is demanded in addition or as an alternate to equitable relief."

Were the trial judge in whichever division he is sitting not to hear the entire case once he has assumed jurisdiction, all of the confusion and waste of judicial effort which the framers sought to eliminate would reappear. The trial of an entire case before the same judge conforms, moreover, to the practice in many jurisdictions, including the federal courts.

Some confusion seems to have arisen concerning *Rule* 3:40-3 dealing with the transfer of actions, but it disappears if that rule be read in connection with *Rule* 3:40-4 relating to the trial calendar. The labeling of a case for trial in the Law Division or the Chancery Division is entrusted to the attorney for the plaintiff, just as under our practice, though not in every jurisdiction, he is entrusted with the issuing of the summons. If he makes a mistake, that mistake may be rectified by an appropriate motion within ten days after the pleadings are closed, or by the court on its own motion at or before the pretrial conference. It is at these points of time that the attorneys and the trial court respectively are most informed as to the nature of the issues in the case. The transfer by the court is discretionary and not reviewable except for an abuse of discretion. Thus, the transfer of a cause of action plainly legal from the Law Division to the Chancery Division or *vice versa* would be an abuse of discretion. Finally, the rule provides that cases once transferred shall not be retrans-

ferred. The two rules taken together outline a simple procedure for the assignment of cases to the trial divisions and provide for the judicial correction of any errors of counsel and safeguard all parties from any improper attempt to select a division or a judge, at the same time protecting the litigants from the mistake of a judge without developing a flood of litigation over a simple problem of which division and which judge is to try a case.

█ █ It is plain from the letter and spirit of the Constitution and the rules that actions which formerly were cognizable in the Court of Chancery—those "maintainable in the Court of Chancery," where the "primary right * * * or the principal relief sought is equitable"—are now to be brought in the Chancery Division and, as under the old practice, once the jurisdiction of equity has attached "it may retain the cause for all purposes, and proceed to a final determination of the entire controversy and, except where the jurisdiction of equity depends on the prior establishment of a right at law, settle purely legal rights and grant legal remedies," *Fleischer v. James Drug Stores, Inc.*, 1 *N. J.* 138, 150 (1948). Accordingly, where an action is brought which in the first instance is cognizable in the Chancery Division, it should be retained in that division irrespective of the fact that before or during the trial the equitable phases of the cause have been fully disposed of, leaving only purely legal issues remaining for determination, *Mantell v. International Plastic Harmonica Corp.*, 141 *N. J. Eq.* 379 (*E. & A.* 1947).

### III.

. The other fundamental issue in the case is whether the defendant Stein is entitled to a trial by jury as of right before the judge of the Superior Court in the Chancery Division before whom this proceeding was commenced and before whom, in our view, all the issues of the controversy should be tried.

. █ By article I, paragraph 9, of the Constitution of 1947, "The right of a trial by jury shall remain inviolate." This provision means exactly what it says. Where the right to a trial by jury existed under the Constitution of 1844, the right

continues unimpaired under the new Constitution. The constitutional provision does not, however, in anywise affect the practice in the various proceedings at law, such as many kinds of suits in lieu of prerogative writs, or in equity, probate, statutory or administrative proceedings generally of trying issues of fact to the court without a jury. Wherever an issue of fact was triable without a jury under the Constitution of 1844, it is triable without a jury under the Constitution of 1947. The constitutional provision preserving trial by jury inviolate does not enlarge the scope of the right to trial by jury; it merely precludes its attrition by either the Legislature or the courts. Nor does it prevent litigants from waiving their right to trial by jury as heretofore; see Rule 3:38–1.

Before the adoption of the new Constitution all the issues in the present case, as we have seen (I, *supra*), would have been cognizable in equity and without a jury. Accordingly it follows from what we have said that there is no right to a trial by jury under the new Constitution and it has been so decided by this court; "The constitutional right of trial by jury is, of course, subject to this inherent equitable jurisdiction [the power of equity to do complete justice to avoid multiplicity of suits]," *Fleischer v. James Drug Stores, Inc.,* 1 *N. J.* 138, 150 (1948) ; see, also, *Ebling Brewing Co., Inc., v. Heirloom, Inc.,* 1 *N. J.* 71, 76 (1948). The contention of the defendant Stein that, by virtue of the terms of *R. S* 2:29–9, he would have been entitled as of right to a jury trial under the practice prevailing prior to the effective date of the Judicial Article of the new Constitution is entirely without merit. By that section it was provided that where, in suits in Chancery, a question arose "ordinarily determinable at law and requiring a jury trial" and a jury trial was demanded in the pleadings, "the court shall send such issue of fact to a court of law for trial," and further directing that "the Court of Chancery shall retain the cause until the legal question shall be determined," *R. S.* 2:29–9. Manifestly the object of the statute was remedial only, its sole purpose being to permit the Court of Chancery to retain jurisdiction of a cause in which equitable relief was dependent upon a legal right or rights over which equity had no jurisdiction and

which first had to be established at law, such as title to land, instead of dismissing the suit as premature, as was the practice theretofore, *Weber v. L. G. Trucking Corp.,* 140 *N. J. Eq.* 96 (*E. & A.* 1947). Thus it is that the question had to be not merely one "ordinarily determinable at law" but in addition one "requiring a jury trial," *R. S.* 2:29–9, before the mandate of the statute became effective. In this respect the statute was but declaratory of pre-existing procedure. It was not and could not have been intended thereby to grant a jury trial as of right as to incidental legal issues such as money damages involved in a suit in Chancery wherein equitable remedies were sought. To have so construed this statute would have been to render it unconstitutional as an improper infringement upon the inherent jurisdiction of the Court of Chancery. We therefore conclude that the defendant Stein is not entitled as of right to a trial by jury with respect to the issues encompassed within his demand and that such denial in no way violates his constitutional guarantee under article I, paragraph 9, of the Constitution of 1947.

Nor is there anything in the new rules which requires a jury trial. By *Rule* 3:39–2 all issues of fact not triable of right by a jury shall be decided by the court without a jury, subject to the provisions of *Rule* 3:39–1. This rule (3:39–1), in so far as it concerns us here, provides merely that the court *may* try with an advisory jury any issue of fact not triable of right by a jury. Although the advisory jury under the old practice was sparingly used, that was doubtless for the reason that its verdict was not binding on the court and it therefore served no useful purpose in the ordinary case.

Accordingly the order of transfer to the Law Division is reversed and the cause remanded to the Chancery Division for further proceedings not inconsistent with the foregoing views.

*For reversal*—Chief Justice VANDERBILT, and Justices CASE, HEHER, OLIPHANT, WACHENFELD, BURLING and ACKERSON—7.

*For affirmance*—None.