STATE OF NEW JERSEY, PLAINTIFF, v. VICTOR LABATO, DEFENDANT.

STATE OF NEW JERSEY, PLAINTIFF, v. HERBERT JOHNSON, DEFENDANT.

Camden County Court
Law Division

Decided August 11, 1950.
Judgment Affirmed May 14, 1951.   See 80 *A.* 2*d* 617.

Mr. *Robert Burk Johnson,* Assistant Prosecutor, for the State.

Mr. *Joseph Tomaselli,* for the defendants (*Messrs. Malandra & Tomaselli,* attorneys).

SHEEHAN, J. C. C. The matter of State v. Victor Labato comes before the court on a plea of *autrefois convict,* entered on behalf of the defendant to an indictment from the grand jury of this county charging him with unlawfully and knowingly having in his possession certain paper slips, documents and memorandum pertaining to the business of lottery policy so-called and otherwise called under the name and style, "numbers." In addition to the entry of the common law plea the defendant has also moved to dismiss the indictment, which motion was accompanied by supporting affidavits, the tenor of which was that he had previously been tried in the Camden City Police Court for a violation of the Disorderly Persons Act upon complaint filed in that court. The facts and circumstances alleged in that complaint were identical with those which are the basis for the indictment under consideration.

The State, acknowledging that the facts upon which the indictment is based are the same as those upon which the disorderly conduct charge was made, made no rejoinder to the plea of *autrefois convict* but submitted an affidavit of the prosecutor of the pleas in which it was stated that he, the prosecutor, upon receiving information that the defendant was to be tried summarily in the Camden City Police Court, made a personal request of the acting judge that the de-

fendant be not thus tried and that the court entertain a complaint charging a violation of the Crimes Act and that he be held for disposition thereof by the grand jury of the county. That this is so is conceded by the defendant and hence there is presented for determination on an agreed set of facts the issue of whether or not the defendant is now in double jeopardy, contrary to the prohibition of the Constitution of 1947.

This provision of the Constitution, Article I, paragraph 11, declares in its pertinent part that "no person shall, after acquittal, be tried for the same offense," and is a verbatim repetition of Article I, paragraph 10, of the Constitution of 1844. This identity of language is no mere coincidence, the Legislature having expressly provided, in its submission to the electorate of the call of a constitutional convention, that no charter could be adopted without including the Bill of Rights, which provides the guarantee of those natural and unalienable rights belonging to free and independent men. Therefore, while no interpretation has been put upon this clause since the effective date of the Constitution of 1947, what has been judicially stated by our appellate courts in interpretation of the clause as it stood in the Constitution of 1844 remains, if not as controlling authority, at least as a reliable guide for courts of first instance. Thus resort may profitably be made to the case of *State v. Cooper*, 13 *N. J. L.* 361 (*Sup. Ct.* 1833), a century-old landmark, followed without deviation in this State and cited and acknowledged in virtually every jurisdiction for its lucid exposition of the principle of double jeopardy. While the constitutional language then took the form of the Federal Constitution, the substance and meaning has been in no sense altered or weakened, as witness this observation by the opinion writer, Justice Drake: "(though) the Constitution of New Jersey adopts and declares this important principle * * * * Our courts of justice would have recognized it, and acted upon it, as one of the most valuable principles of the common law, without any constitutional provision. But

the framers of our Constitution have thought it worthy of especial notice. And all who are conversant with courts of justice, and the proceedings in them, must be satisfied that this great principle forms one of the strong bulwarks of liberty; and that if it be prostrated, every citizen would become liable, if guilty of an offense, to the unnecessary costs and vexations of repeated prosecutions, and if innocent, not only to those, but to the danger of an erroneous conviction from repeated trials." There follows an illuminating review of the authoritative English texts and cases up to then treating with this subject and in conclusion the following determination: "I have so far considered the case of a plea of former acquittal; because it depends upon the same principle of that of *autrefois convict*, and the writers are more full in their notice of it, than of the latter; and it is a general rule that in cases where an acquittal upon the first indictment would bar a second, a conviction on the first would have the same effect."

At this point emphasis must be put upon the fact that the authority upon which the Camden City Police Court acted and upon which the present indictment rests emanates from the same source, the Legislature of the State, thus rendering inapplicable that line of cases of which *United States v. Lanza,* 260 *U. S.* 377 (1922) and *Howe v. Treasurer of Plainfield,* 37 *N. J. L.* 145 (*Sup. Ct.* 1874) are examples in the federal and state jurisdictions respectively, because in each of the instances there considered the subsequent prosecution and punishment was at the hands of an authority or sovereignty separate and distinct in its field from that which had acted antecedently. In the former case it was held that conviction in a state court for violation of a state prohibition law did not justify a defense of double jeopardy in a proceeding by the United States against the same defendant for violation of the federal prohibition law. In the latter case it was held that a summary proceeding for violation of an ordinance of the city of Plainfield forbidding the sale of liquor without a license was not barred because it was also punishable as a misdemeanor. The original support for this

doctrine appears in the case of *Moore v. People of the State of Illinois*, 14 *Howard* 13 (1852), in which the United States Supreme Court, through Justice Grier, said: "Every citizen of the United States is also a citizen of a State or territory. He may be said to owe allegiance to two sovereigns, and may be liable to punishment for an infraction of the laws of either. The same act may be an offense or transgression of the laws of both."

In the *Lanza* case, after citing and reaffirming the principle as laid down in *Moore v. People of the State of Illinois*, Chief Justice Taft discourses upon a practical consideration that demanded recognition because of the ever present necessity for preventing unseemly conflicts between federal and state sovereignties in the following terms: "If Congress sees fit to bar prosecution by the Federal courts for any act when punishment for violation of State prohibition has been imposed it can of course do so by proper legislative provision but it has not done so. If a state were to punish the manufacture, transportation and sale of intoxicating liquor by small or nominal fines, the race of offenders to the courts of that state to plead guilty and secure immunity from Federal prosecution for such acts would not make for respect for the Federal statute or for its deterrent effect. But it is not for us to discuss the wisdom of legislation; * * *."

Advertence to these cases is made to illustrate that no consideration of mere policy was invoked to justify the seeming harshness of double punishment for a single act or that the principle of double jeopardy was more lightly regarded in offenses that are generally classified as *mala prohibita* but that it yields only before an equally weighty and supervening principle. So while the argument advanced by the prosecutor that such summary disposition as is contemplated by the Disorderly Persons Act does not admit of the use of the more effective handling of such matters available under the Crimes Act, such as more severe punishment, supervision on parole or probation, makes out a more impressive case on policy, it does not assume the dignity of a principle nor can it be made

the basis upon which a constitutional right of the individual citizen may be denied. Proceeding from these necessarily general preliminaries to those cases in which a situation more closely linked in fact to that under review were treated by the courts, it is observed that in 1933 the Legislature first attempted to encompass within the limits of the Disorderly Persons Act such an offense as that with which the defendant is charged. In the Pamphlet Laws of that year, at page 216, a supplement to the act provides as follows: "Any person who shall possess * * * any ticket, tickets, slip, paper or other memoranda or any share or interest in any ticket, tickets, slip or memoranda in any number game * * * shall be deemed and adjudged to be a disorderly person." Shortly after this enactment the Supreme Court, in the case of *Dombrowski v. State*, 111 *N. J. L.* 546 (*Sup. Ct.* 1933), set aside a conviction in a city police court, holding that the supplement was unconstitutional because it sought to reduce the penalty for participating in a game of chance, as such penalty was prescribed in 1897, at the time of the adoption of the amendment to Art. IV, § VII, par. 2 of the Constitution of 1844, providing that, "nor shall any gambling device, practice or game of chance * * * now prohibited by law * * * * be legalized, or the remedy, penalty or punishment now provided therefor be in any way diminished." It was there held that "The constitutional requirements respecting offenses against the lottery law may not be relaxed. Arrest and indictment afford just as speedy and effective a method for the suppression of crime, if vigorously pursued, as proceedings under the Disorderly Persons Act. But even if they do not, the remedy is by change in the organic law." Notwithstanding the fact that this decision was not further reviewed or in anywise distinguished the Legislature again, in 1934, enacted a law amending the Disorderly Persons Act providing as follows: "Any person who shall have in his possession or custody any lottery slips, books or records pertaining to a lottery or any person who shall have in his possession or have in an automobile in his custody any ticket

or tickets, slip or slips, paper, document or memoranda in any way pertaining to the business of a number game, shall be adjudged to be a disorderly person." Again, upon conviction under this act, it was reviewed in the case of *Murzda v. Duch*, 178A. 629 *(Sup. Ct.* 1935). The Supreme Court once more held that such a conviction was null and void and the statute unconstitutional. The court said: "It was settled in *Dombrowski v. State*, 111 *N. J. L.* 546, that the 1933 amendment to the Disorderly Persons Act, insofar as it provided that any one who should possess a number game slip should be deemed a disorderly person, was unconstitutional, because a number slip was after all a slip in a lottery game and the legislature was precluded from making that which was a high misdemeanor a mere disorderly act * * *. Since the Constitution precludes the legislature from making any change which will in any way diminish the punishment provided by law, for the suppression of gambling, existing at the time the constitutional amendment was adopted, the prosecuting authorities will be obliged to proceed under the statute and laws which existed in 1897, and may not avail themselves of the provisions of the Disorderly Persons Act as amended in 1933 or 1934."

At the instance of the State a review was sought in the Court of Errors and Appeals and the holding of the Supreme Court was reversed. The court of last resort, referring to the Crimes Act, said: "Thus the sale and purchase of lottery tickets, as distinguished from the lottery itself, is made the subject of a specific inhibition, while the bare possession of such tickets is not. This is conclusive of an intention and purpose not to incorporate in the fundamental law the statutory provision relating to possession. It makes evident a design not to oust the Legislature of authority to deal with the mere possession of slips, papers and documents pertaining to that form of gaming. * * * And it is to be borne in mind that neither purchase of the ticket, nor the possessor's intent to sell it, or to participate in a lottery, is an ingredient of the possession made punishable by the statute under con-

sideration, nor its predecessor act of 1895, *supra*. The possession of such tickets or slips may not be characterized by an intent to put them to an unlawful use. Yet it tends to create both opportunity and temptation to infringe the law against lotteries; and the object of the statute is plainly to strike at the evil in its inception by a measure that is primarily preventive in character. * * * The amendment was not intended to limit this legislative function. The statute is therefore constitutional."

The practical result therefore is that there are two methods by which offenses of this nature may be prosecuted, the first essentially preventive in character, the second essentially punitive, and the election by the State to prosecute under the one excludes a subsequent prosecution under the other. To hold otherwise would be to ascribe to the Legislature a purpose to impose a double penalty for a single offense contrary to the constitutional guarantee which operates no less to prevent invasion by the legislative process than it does to require effective enforcement by the judicial.

The provision of the Crimes Act is contained in *R. S.* 2:147–3, *par. b* and reads that: "Any person * * * who shall knowingly have in his possession any paper, document, slip or memorandum that shall pertain in any way to the business of lottery or lottery policy, so-called * * * shall be [deemed] guilty of a high misdemeanor." It will be noted that the element of knowledge is contained in this offense as distinguished from the Disorderly Persons Act under which possession alone is denounced and thus there is required, in order to justify the plea, a showing that the same facts as would support the finding that the defendant was guilty of mere possession would be sufficient also to support a finding that he was guilty of possession with knowledge. On this point the case of *State v. Collins,* 43 *A.* 896 (*E. & A.* 1899) is dispositive. There the Court of Errors and Appeals was called upon to determine that precise point in interpreting the source law of the statute under which the defendant is here indicted. This statute, contained in "A supplement to an * * * Act for the Punishment

of Crimes," *L.* 1895, *p.* 593, varied only from the present law in that it denominated the offense a misdemeanor and in every other essential part is identical. In that case the defendant was arrested and, upon being searched, it was discovered that he had in his pocket an envelope containing policy slips. At the trial, after this showing and no more by the State, the defendant testified that he had been given the envelope by one Dick Jones, who asked him if he would take it by ferry to the Glen Island Hotel, for which he was assured that there would be some money for him. He denied any knowledge of the contents of the envelope and expressed surprise at being arrested. The trial court denied a motion for acquittal on the ground that there was no proof from which the jury could legally infer knowledge on the part of the defendant of the character of the papers found in his possession and, after conviction by the jury, the defendant appealed on this single allegation of error. The appellate court sustained the conviction, saying that, "The jury had the right to conclude, from all the facts proved in the case that he knew just what he had in his possession * * *. That the defendant did not know this would be to charge him with entire unconsciousness of his surroundings, and from this evidence it is a necessary conclusion that his defense of the want of knowledge of the character of the papers in his possession was a pretense, or rather an experiment, upon the credulity of the jury."

In this matter, all that would be required of the State to establish a *prima facie* case under the Crimes Act would be to show the identical act of the defendant that was the basis for the complaint, conviction and punishment in the police court. To deny the validity of the plea here made would be to sanction the imposition of double punishment upon a defendant who has already been brought before and punished by a court of competent jurisdiction for an offense prescribed by the same authority as that under which this indictment was found, and here, as in the case of *State v. Cooper, supra,* there is revealed "a case where the State has thought proper to prosecute the offense in its mildest form, and it is better that the

residue of the offense go unpunished, than by sustaining a second indictment to sanction a practice which might be rendered an instrument of oppression to the citizen."

The indictment is dismissed.

The decision here controls in the case of State v. Herbert Johnson.