183 N.J. Super. 519 (1981)
444 A.2d 623
STATE OF NEW JERSEY, PLAINTIFF,
v.
JOSE IGNACIO TENRIERO, DEFENDANT.
Superior Court of New Jersey, Law Division (Criminal), Union County.
Decided December 16, 1981.
John H. Stamler, Union County Prosecutor, for the State (Keven G. Byrnes and Norman M. Hobbie, Assistant Prosecutors, appearing).
Harry B. Kotler for defendant.
BEGLIN, J.S.C.
Defendant seeks a trial by jury. He is charged with the disorderly persons offense of knowing possession of gambling *520 records of a kind commonly used in the conduct of a lottery, in violation of N.J.S.A. 2C:37-3 a(2).
Prior to enactment of the New Jersey Code of Criminal Justice (Code), N.J.S.A. 2C:1-1 et seq., an offense of this nature was classified either as a misdemeanor or as a disorderly persons offense. A misdemeanor subjected one to a State Prison term of not more than three years and a fine of not more than $1,000, N.J.S.A. 2A:121-3, while a disorderly persons offense carried a maximum penalty of six months in a county penal institution and a $500 fine. N.J.S.A. 2A:170-18 and 169-4.[1]
The Code makes significant changes in the penalties attendant to this offense. Possession of gambling records is now a crime of the third degree subjecting one to a term of imprisonment of between three and five years and a fine of not more than $25,000, N.J.S.A. 2C:43-6 a(3) and 37-3 c, unless the records represent 100 or less plays or chances.[2] In the latter event, such possession is a disorderly persons offense carrying a term of imprisonment not exceeding six months and a fine of not more than $10,000. N.J.S.A. 2C:43-8 and 37-3 c.
The Code specifically provides that disorderly persons offenses are not crimes within the meaning of the New Jersey Constitution. There is no right to indictment by a grand jury nor to trial by jury. N.J.S.A. 2C:1-4 b. For an offense to become a crime under the Code, a sentence in excess of six months imprisonment must be authorized. N.J.S.A. 2C:1-4 a. However, all gambling offenses, be they crimes or disorderly persons offenses, must be prosecuted in the Superior Court, N.J.S.A. 2C:37-8, although the municipal court otherwise has jurisdiction *521 of disorderly persons offenses and offenses not requiring indictment by grand jury. N.J.S.A. 2A:8-21 d and g.[3]
The questions, unanswered since adoption of the Code, are whether as a result of jurisdiction being placed in the Superior Court, a defendant charged with a disorderly persons gambling offense is entitled to a jury trial, and if not, whether such denial violates either the State or Federal Constitution.
R. 3:1-5, "Trial of Non-Indictables in Superior Court," was adopted to implement N.J.S.A. 2C:37-8 and provides that, in instances such as presented here, proceedings shall be governed by the rules in Part III "insofar as applicable." This, however, does not mean that the rules governing indictment and jury trial apply, given the specific prohibition of such in N.J.S.A. 2C:1-4 b. Rather, it is recognition that jurisdiction has been removed from the municipal court and recognition of the unique treatment gambling offenses have for some time received in this State. That treatment is exemplified by the Supreme Court directive requiring all sentencing in gambling cases to be handled by one designated judge in each county, State v. DeStasio, 49 N.J. 247, 253 (1967). This rule gains further meaning from N.J.S.A. 2C:34-2 b, which grants the right to a trial by jury to one charged with the disorderly persons offense of selling obscene material to anyone 18 years of age or older.
Therefore, the fact that gambling cases must be tried in Superior Court does not in any way affect the denial of the right to indictment and jury trial found elsewhere in the Code for disorderly persons offenses. Had the Legislature intended otherwise, it would have made provision in the same manner as for the disorderly persons obscenity offense.
N.J.S.A. 2C:1-4 a classifies as a "crime" any offense for which a sentence of imprisonment in excess of six months is authorized. *522 Such offenses are subject to the rights of indictment by a grand jury and trial by a petit jury. All other offenses are petty offenses and not crimes within the meaning of the State Constitution, so that conviction of such offenses does not subject one to any of the disabilities, disadvantages or stigma which follow a conviction of a crime.
Art. III, § 2 of the United States Constitution provides that the trial of all crimes, except in cases of impeachment, shall be by jury. Additionally, under the Sixth and Fourteenth Amendments, the accused in all criminal prosecutions shall enjoy the right to a speedy trial by an impartial jury. However, despite the all-inclusive and sweeping language of the Constitution, it has long been established that there is no right to a jury trial in the prosecution of a petty offense. Frank v. United States, 395 U.S. 147, 89 S.Ct. 1503, 23 L.Ed.2d 162 (1969). In determining whether a particular offense is to be classified as criminal or petty, the U.S. Supreme Court has sought objective indicia of the seriousness of the offense, District of Columbia v. Clawans, 300 U.S. 617, 57 S.Ct. 660, 81 L.Ed. 843 (1937), the most relevant factor being the severity of the penalty that attaches.
In Duncan v. Louisiana, 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968), a line of demarcation was drawn between criminal and petty offenses, with the latter being exempt from the mandate of the Sixth Amendment. Subsequently, in Baldwin v. New York, 399 U.S. 66, 90 S.Ct. 1886, 26 L.Ed.2d 437 (1970), it was held that no offense can be deemed petty for purposes of entitlement to trial by jury where the authorized punishment is imprisonment for more than six months.
The same constitutional scheme of classification has been recognized in this State:
Below the grade of crime are lesser offenses, none of which carries the stigma or the disabilities which follow upon a conviction of crime [citations omitted], or authorized maximum penalties as severe as those which may be imposed upon a conviction for crime. Among the lesser offenses are "disorderly person" offenses which cover a wide gamut of misbehavior ... All of the offenses below the grade of crime come within the generic category of "petty offenses", not to suggest thereby that the authorized punishments are trivial but rather to say *523 that because the consequences of a conviction are limited, these offenses are beyond the concept of "crime" within the intent of our State Constitution's provisions for indictment and trial by jury. That offenses below the grade of crime may thus be tried without indictment and petit jury has long been the law of our State. [In re Buehrer, 50 N.J. 501, 517-518 (1967)]
Accordingly, a disorderly persons offense is deemed to be a "petty offense" rather than a "crime" within Art. I, par. 8 (relating to indictment) and Art. I, pars. 9 and 10 (relating to trial by jury) of the New Jersey Constitution. State v. Owens, 54 N.J. 153 (1969). In Owens the court went on to state:
We think the severity of the authorized punishment is the only reliable test. If the maximum punishment does not exceed what may be imposed for a petty offense and the conviction does not carry the civil disabilities of a conviction for crime, we see no reason to say the Constitution demands a procedure reserved for crime. Nor do we think it useful to sample popular opinion to determine how much stigma is attributed to each act of misconduct and thereupon to decide, in some way which escapes us, whether an offense is more than petty notwithstanding the statute has so treated it. It is for the Legislature alone to assay the public's judgment, and the Legislature does so when it prescribes the legal consequences which may attend a conviction. [at 160]
See, also, II N.J. Penal Code: Commentary 9, 10 and 319, Final Report of N.J. Criminal Law Revision Commission (1971), and In re Yengo, 84 N.J. 111, 120-121 (1980).
Defendant here is not charged with commission of a crime and, if convicted, faces a maximum of six months imprisonment. Is he nonetheless entitled to a jury trial because he also could receive a $10,000 fine?
In dealing with the disorderly persons offense under N.J.S.A. 2A:170-26, which carried a maximum by way of fine of $1,000, the Owens court drew upon its earlier decision in Buehrer that such a fine presents "no problem." 50 N.J. at 519. This conclusion was reaffirmed in Yengo, supra, where the court again noted it has not set the "outer limits of punishment" under the entitlement to jury trial test. 84 N.J. at 121.
Clearly, the possibility of a $1,001 fine in this context then does not take on constitutional significance. Indeed, the U.S. Supreme Court has recognized the intrinsic difference between imprisonment and a fine.

*524 No talismanic significance is to be accorded the $500 monetary fine limit on petty offenses. It is one thing to hold that deprivation of an individual's liberty beyond a six month term should not be imposed without the protection of a jury trial, but it is quite another to suggest that, regardless of the circumstances, a jury trial is required where any fine greater than $500 is contemplated. [Muniz v. Hoffman, 422 U.S. 454, 477, 95 S.Ct. 2178, 2190, 45 L.Ed.2d 319 (1975)]
Significant changes were made by the Code in dealing with gambling offenses. It takes into account the unique nature of this type of activity, the probability that individual offenders are more likely than not employed by the syndicate (without which gambling could not function) and the widespread type of business venture involved. See further descriptions in State v. Ivan, 33 N.J. 197 (1960) and State v. DeStasio, 49 N.J. 247 (1967).
Recognizing that illegal gambling is a source of substantial revenues to those involved in organized crime, the Code adopts a gradation for gambling offenses which focuses law enforcement efforts upon those persons at the managerial level of gambling operations and a schedule of fines which emphasizes fines as a deterrent to the monetary gains which result from gambling activities. [Statement to Senate Bill 738 of Senate Judiciary Committee, May 15, 1978 (7 Criminal Justice Q. 58, N.J. Division of Criminal Justice 1980)]
The Legislature, in adopting the Code, has "elevated" certain aspects of gambling activity to the status of a third degree crime, while it has "downgraded" other aspects from a criminal to a disorderly persons offense. Throughout a gradation scheme based on the level of organizational involvement, the normal fine prescribed for the offense is increased but the term of imprisonment is not. The severity of a penalty aimed at one particular activity is not to be equated automatically with penalties directed toward other conduct. Neither the Federal nor State Constitution requires such. Rather, the Legislature has the power to determine what offenses should be denominated "criminal" or "petty" as well as what consequences will follow upon a conviction for both. Its treatment of gambling offenses under the Code has not transgressed any constitutional boundary. The possibility of a $10,000 fine in circumstances such as these does not accord one the right to trial by jury. Such a penalty, along with a six month term of imprisonment, is a consequence which may constitutionally follow upon a conviction *525 for the disorderly persons gambling offense under N.J.S.A. 2C:37-3 a.
Defendant's motion is denied.
NOTES
[1] This scheme was repealed by N.J.S.A. 2C:98-2, effective September 1, 1979. See explication of both offenses in State v. Labato, 12 N.J. Super. 578, 79 A.2d 905 (Cty.Ct. 1950), aff'd 7 N.J. 137, 80 A.2d 617 (1959).
[2] Under the comparable bookmaking offense, the records must represent more than five bets totaling more than $1,000 for it to be graded as a third degree crime.
[3] Compare N.J.S.A. 2A:8-22, where the municipal court has jurisdiction to determine certain criminal offenses if defendant waives indictment and trial by jury and the county prosecutor consents.