287 N.J. Super. 385 (1996)
671 A.2d 171
GEI INTERNATIONAL CORPORATION, A NEW JERSEY CORPORATION (FORMERLY KNOWN AS ANDREW DENHOLM, INC.), PLAINTIFF-APPELLANT,
v.
ST. PAUL FIRE AND MARINE INSURANCE COMPANY, FEDERAL INSURANCE COMPANY, ATLANTIC MUTUAL INSURANCE COMPANY, NORTH-WESTERN NATIONAL INSURANCE COMPANY, MIDLAND INSURANCE COMPANY, CHUBB GROUP OF INSURANCE COMPANIES, FIREMAN'S FUND INSURANCE COMPANY, INC., IDEAL MUTUAL INSURANCE COMPANY, INC., ORB HOLDING COMPANY, JOHN BLACK, ROBERT DEDERER, FRANK VANDERHOOF, METRAMATIC CORPORATION, AND NEW JERSEY PROPERTY/LIABILITY GUARANTY ASSOCIATION, DEFENDANTS, AND HI-SPEED CHECKWEIGHER, INC., SUCCESSOR IN INTEREST TO METRAMATIC CORPORATION, AND AG FUR PRAZIONSINSTRUMENTE, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued January 11, 1996.
Decided February 16, 1996.
*388 Before Judges BAIME, VILLANUEVA, and KIMMELMAN.
Robert Mahoney argued the cause for appellant GEI International Corporation (Friedman Siegelbaum, attorneys; James M. Andrews and Mr. Mahoney, on the brief).
Michael Dore argued the cause for respondents Hi-Speed Checkweigher, Inc. and AG fur Prazionsinstrumente (Lowenstein, Sandler, Kohl, Fisher & Boylan, attorneys; Mr. Dore, of counsel and on the brief; Lauren M. Hollender, on the brief).
The opinion of the court was delivered by KIMMELMAN, J.A.D. (temporarily assigned).
In this toxic tort litigation, the issues of which have been bifurcated for trial, plaintiff seeks (1) contribution from certain named defendants for its cleanup costs (the liability trial) and (2) a declaratory judgment against the insurance company defendants to determine and enforce coverage under several policies (the coverage trial). The trial court struck plaintiff's demand for a jury trial on both of the bifurcated issues. Pursuant to R. 2:2-4, we granted plaintiff's application for leave to appeal from that interlocutory ruling.
Although defendants Hi-Speed Checkweigher, Inc. (Hi-Speed) and AG fur Prazionsinstrumente (AG) in their answer did demand a trial by jury, their demand was obviously withdrawn when said defendants Hi-Speed and AG successfully moved to strike plaintiff's demand for a trial by jury in the liability trial.
In addition to plaintiff's jury demand, the defendant insurance companies, in their answers, also demanded a trial by jury. The trial court additionally struck all such demands by said defendants for a trial by jury by ordering a separate bench trial on the insurance coverage issues. It was further ordered that the verdict to be rendered in the liability trial assigning liability amongst the various parties would be binding upon the insurance company defendants. The insurance company defendants have not appealed *389 the trial court's ruling and have neither entered appearances nor responded with respect to this appeal.
Defendants Orb Holding Company, John Black, Robert Dederer, and Frank Vanderhoof (sometimes hereinafter referred to as Orb or the Orb defendants) also demanded a trial by jury in their answer, cross-claims, and third-party complaint seeking to compel coverage under policies of insurance issued to them. Their demand is regarded as having been likewise stricken by virtue of the foregoing orders. They, too, have not appealed the trial court's ruling and have neither entered appearances nor responded with respect to this appeal.
Factually, this action relates to the apportionment of environmental remediation costs incurred and to be incurred by plaintiff in connection with an industrial site located in Landing (Roxbury Township), New Jersey. Defendant Metramatic Corporation (Metramatic) operated a manufacturing facility on the site from 1969 to March 1983. Defendants Black, Dederer, and Vanderhoof owned Metramatic during this period. Defendant Orb, a general partnership composed of Black, Dederer, and Vanderhoof, owned the site itself. In March 1983, Orb transferred title to the real estate to Metramatic, and plaintiff purchased the capital stock of Metramatic.
Plaintiff continued with the operation of Metramatic at the site in question until July 1988 when plaintiff sold the stock of Metramatic to defendant AG. Metramatic was then merged into defendant Hi-Speed, a subsidiary of AG.
Plaintiff's sale of the Metramatic stock to AG triggered the Environmental Cleanup Responsibility Act (ECRA), N.J.S.A. 13:1K-6 to -14, which mandates the remediation of contaminated industrial property upon transfer of ownership of or cessation of the operations conducted thereon. By subsequent amendment, ECRA is now known as the Industrial Site Recovery Act (ISRA), N.J.S.A. 13:1K-6 to -14. Compliance with ECRA required plaintiff to conduct a full investigation to determine the possible existence of hazardous contamination and the necessity for environmental *390 remediation of the site. N.J.S.A. 13:1K-9. The investigation revealed contamination. In order for the sale of Metramatic's stock to be consummated before the cleanup of the site could take place, it was necessary for plaintiff to enter into an administrative consent order (ACO) with the New Jersey Department of Environmental Protection. Plaintiff has undertaken the cleanup of the toxic contamination found on the site in compliance with the terms of the ACO and to date has incurred costs, we are informed, in excess of $2,000,000. The cleanup work continues.
Plaintiff has brought this action against Hi-Speed and AG, as successors to Metramatic, and the Orb defendants, the prior owners of the site, for the recovery of plaintiff's remediation costs from said defendants by way of contribution.

I
The liability trial to determine the relative responsibility of Hi-Speed, AG, and the Orb defendants for the cost of remediating the contamination at and around the site is principally based upon the contribution provisions of the Spill Compensation and Control Act (the Spill Act), N.J.S.A. 58:10-23.11 to -23.11z. The complaint also contains counts for common law contribution and indemnification and for strict liability in tort, which latter claims we regard as ancillary and incidental to the contribution claims asserted under the provisions of the Spill Act.
The specific provisions of the Spill Act on which plaintiff relies are contained in N.J.S.A. 58:10-23.11f(a)(2), which provides:
Whenever one or more dischargers or persons cleans up and removes a discharge of a hazardous substance, those dischargers and persons shall have a right of contribution against all other dischargers and persons in any way responsible for a discharged hazardous substance who are liable for the cost of the cleanup and removal of that discharge of a hazardous substance. In an action for contribution, the contribution plaintiffs need prove only that a discharge occurred for which the contribution defendant or defendants are liable pursuant to the provisions of subsection c. of section 8 of P.L. 1976, c. 141 (C.58:10-23.11g), and the contribution defendant shall have only the defenses to liability available to parties pursuant to subsection d. of section 8 of P.L. 1976, c. 141 (C.58:10-23.11g). In resolving contribution claims, a court may allocate the costs of cleanup and *391 removal among liable parties using such equitable factors as the court determines are appropriate.

[Emphasis added.]
The emphasized portion of the subsection above set forth does not specifically authorize a jury to allocate the costs of cleanup. A "court" is so authorized to make the allocation, but the question for decision is whether the language used by the Legislature was meant to preclude a trial by jury.
We find instructive to the determination of this question the reasoning of the Supreme Court in Shaner v. Horizon Bancorp., 116 N.J. 433, 443, 561 A.2d 1130 (1989), in which the Court considered whether the Legislature intended a trial by jury with respect to an action brought under the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 to -42 (LAD). The Court in that case said:
The fact that the 1979 amendment did not deal expressly with the right to trial by jury is also highly indicative of legislative intent not to confer such a right. It is reasonable to believe that if the Legislature intended to confer the right to a jury trial when in 1979 it authorized a complainant to bring an action in Superior Court, it would have expressly so provided in its amendment of the LAD. When conferring a right to a jury trial for newly-created statutory causes of action, the Legislature has a history of doing so by express provision. See, e.g., N.J.S.A. 2A:15-56 (labor dispute injunctions); N.J.S.A. 2A:62-4, 2A:62-18 (quiet-title actions); N.J.S.A. 2A:62-21 (actions to determine the existence and validity of covenants, conditions, agreements, or restrictions in deeds to real estate); N.J.S.A. 2A:62-24 (actions to determine title to riparian lands and lands under water); N.J.S.A. 3B:12-24 (civil proceedings to determine mental incompetency); N.J.S.A. 40:189-3 (actions for abatement of nuisances); and N.J.S.A. 45:14B-42 (actions regarding confidentiality of patient information by psychologists); see also State v. Tenriero, 183 N.J. Super. 519, 521 [444 A.2d 623] (Law Div. 1981) (plaintiff denied a right to jury trial in action brought under statute that provided Superior Court with jurisdiction over gambling offenses: "[h]ad the Legislature intended otherwise, it would have made provision in the same manner as for the disorderly persons obscenity offense.")
[Id. at 443, 561 A.2d 1130.]
In New Jersey, as in other jurisdictions, the right to trial by jury remains inviolate, N.J. Const. art. I, ¶ 9, but inviolate only with respect to causes of action that were triable by jury at common law. "[T]he Court has been consistent in denying a right to jury trial unless that right existed prior to the adoption of the *392 State Constitution." Shaner, supra, 116 N.J. at 447, 561 A.2d 1130. Whether reference is made to the 1947, 1844, or 1776 Constitutions is immaterial to the within matter. There is no doubt that environmental cleanup litigation relative to the apportionment of remediation costs was unknown at common law. The trial court correctly noted such absence from the fabric of the common law as it existed in 1776. The Spill Act is a newly-created statutory right and the Legislature by its enactment did not codify nor could it have codified a common law right that did not pre-exist.
Again, in Shaner, supra, 116 N.J. at 448-49, 561 A.2d 1130, the Court said:

Montclair v. Stanoyevich, [6 N.J. 479, 79 A.2d 288 (1951)], was the first decision by this Court to find no right to jury trial existed for newly-created statutory rights. This case involved a petty criminal offense before a magistrate involving violation of a zoning ordinance. The Court found that convictions before magistrates for small criminal offenses were unknown at common law, and therefore the defendant had no right to a jury trial. Since then, lower courts have been consistent in denying a right to jury trial for newly-created statutory causes of action. See N.J. Sports & Exposition Auth. v. Del Tufo, 210 N.J. Super. 664 [510 A.2d 329] (Law Div. 1986), aff'd, 230 N.J. Super. 616 [554 A.2d 878] (App.Div. 1989) (no right to jury trial in stockholders' action to determine fair value of their shares because proceeding was statutory rather than contractual); Manetti v. Prudential Property & Casualty Ins. Co., 196 N.J. Super. 317, 320-21 [482 A.2d 520] (App.Div. 1984) (no right to jury trial for statutorily-created "PIP" benefits, which are granted according to principles of statutory construction, not contract); State v. Tenriero, . .., 183 N.J. Super. 519 [444 A.2d 623] (no right to jury trial for gambling offenses under statute giving jurisdiction to Superior Court); Van Dissel v. Jersey Cent. Power & Light Co., 181 N.J. Super. 516 [438 A.2d 563] (App.Div. 1981) (no right to jury trial for inverse condemnation action since this right arises under state Constitution and statute, and is, therefore, foreign to the common law), certif. den., 89 N.J. 409 [446 A.2d 142] (1982), granted and vacated on other grounds, 465 U.S. 1001, 104 S.Ct. 989, 79 L.Ed.2d 224, on remand, 194 N.J. Super. 108, 122-23 [476 A.2d 310] (App.Div.) (conclusion on jury issue undisturbed), certif. denied, 99 N.J. 186 [491 A.2d 690] (1984); Peterson v. Albano, 158 N.J. Super. 503 [386 A.2d 873] (App.Div. 1978) (no right to jury trial in summary dispossess action because it is statutory), certif. den., 78 N.J. 337 [395 A.2d 205] (1978); Quinchia v. Waddington, 166 N.J. Super. 247, 249 [399 A.2d 679] (Law Div. 1979) (no right to jury trial to recover from Unsatisfied Claim and Judgment Fund since right was new substantive right that vested by statute and was foreign to the common law; "[a]bsent legislative mandate, the right of trial by jury is confined to those matters in which it existed under the common law."); Kugler v. Banner Pontiac-Buick, Opel, Inc., 120 N.J. Super. 572 [295 A.2d 385] (Ch. Div. 1972) (no right to jury trial for *393 prosecution under Consumer Fraud Act where statutory action was "completely unknown" to common law).
Following Shaner, supra, this court held that a claim under the New Jersey Antitrust Act, N.J.S.A. 56:9-1 to -19, was not subject to trial by jury because the features of the Act were virtually unknown at common law. Boardwalk Properties, Inc. v. BPHC Acquisition, Inc., 253 N.J. Super. 515, 529-530, 602 A.2d 733 (App.Div. 1991).
Apart from the lack of common law underpinning for the cause of action that plaintiff here asserts in the liability trial, it would appear that the language used by the Legislature clearly intended a court to make an equitable determination without a jury trial. In resolving contribution claims under the Spill Act, a "court" is the instrumentality intended by the Legislature to allocate the costs of cleanup "among liable parties using such equitable factors as the court determines are appropriate." N.J.S.A. 58:10-23.11f(a)(2). It is the court which is the instrumentality intended to utilize equitable factors. Historically, juries were not intended to determine equitable factors relative to a decision. "A jury is clearly incompetent to frame and deliver a decree according to the doctrines and methods of equity." 1 John N. Pomeroy, Equity Jurisprudence § 116 (Spencer W. Symons ed., 5th ed. 1941).
Under the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA), 42 U.S.C.A. §§ 9601-9675, a federal act substantially similar to the Spill Act, Congress used language nearly identical to the language later used in the Spill Act when it established the right of a person paying cleanup costs to seek contribution. The relevant provision of CERCLA, 42 U.S.C.A. § 9613(f)(1), provides:
Any person may seek contribution from any other person who is liable or potentially liable under section 9607(a).... Such claims shall be brought in accordance with this section and the Federal Rules of Civil Procedure, and shall be governed by Federal law. In resolving contribution claims, the court may allocate response costs among liable parties using such equitable factors as the court determines are appropriate. ...

*394 [Emphasis added.]
The United States District Court for the District of New Jersey, in denying the right to a jury trial under CERCLA where a plaintiff sought contribution from potentially liable persons, held that the cause of action for contribution of remediation costs was unknown at common law and that Congress, by use of the above-quoted statutory language, intended only a bench trial to determine the equitable factors appropriate to govern the right to contribution. Hatco Corp. v. W.R. Grace & Co.-Conn., 859 F. Supp. 769, 774-75 (D.N.J. 1994), aff'd, 59 F.3d 400 (3d Cir.1995). In affirming the District Court, the Third Circuit emphasized that the doctrine of contribution was an historic equitable remedy not triable by jury. 59 F.3d at 412-13.
It is clear to us that plaintiff's additional claims for common law contribution and indemnification and strict liability in tort are ancillary and incidental to plaintiff's claim for contribution under the Spill Act. The Spill Act does preserve the right of a party to seek contribution under common law, N.J.S.A. 58:10-23.11f(a)(3), but by bringing such claim within the context of a Spill Act action for contribution, such claim, irrespective of whether it is a legal or equitable claim, becomes ancillary and incidental to the main cause of action. Traditionally, a court of equity, sitting without a jury, has the power to hear and dispose of legal issues which are ancillary and incidental to the principal dispute. Weintraub v. Krobatsch, 64 N.J. 445, 455, 317 A.2d 68 (1974); Steiner v. Stein, 2 N.J. 367, 378-79, 66 A.2d 719 (1949); Fleischer v. James Drug Stores, 1 N.J. 138, 150, 62 A.2d 383 (1948); see also Mantell v. Int'l Plastic Harmonica Corp., 141 N.J. Eq. 379, 393, 55 A.2d 250 (E. & A. 1947).
We do not regard our recent decision in Bahrle v. Exxon Corp., 279 N.J. Super. 5, 652 A.2d 178 (App.Div. 1995), certif. granted, Bahrle v. Texaco Corp., 140 N.J. 326, 658 A.2d 726 (1995), to affect the result we here reach. In Bahrle, although there was a jury trial with respect to private claims brought under the Spill Act, *395 the jury issue was not the subject of the appeal nor was it argued before this court.

II
The coverage trial, in our view, is also triable by a court without a jury. Plaintiff's complaint seeks a judgment declaring that defendant insurance companies are obligated to reimburse and indemnify plaintiff for all environmental response costs and defense and professional costs and expenses under the respective policies. Declaratory relief is neither equitable nor legal but takes on the color of either depending upon the issue for decision and basic nature of the relief sought. Gov't Employees Ins. Co. v. Butler, 128 N.J. Super. 492, 495, 320 A.2d 515 (Ch.Div. 1974). The focus must be upon the nature of the relief requested, not upon the underlying issues to be dealt with in order to reach the ultimate relief. Weinisch v. Sawyer, 123 N.J. 333, 343-345, 587 A.2d 615 (1991). In effect, what plaintiff's declaratory judgment action seeks by way of remedy is a decree of specific performance mandating that the defendant insurance companies adhere to and perform the terms of their respective policies. Such an action is for the court and not for a jury. Ballard v. Schoenberg, 224 N.J. Super. 661, 668, 541 A.2d 258 (App.Div.), certif. denied, 113 N.J. 367, 550 A.2d 473 (1988); see also Eckerd Drugs of N.J., Inc. v. S.R. 215, Rite-Aid Corp., 170 N.J. Super. 37, 40, 405 A.2d 474 (App.Div. 1979); Morton Intern. v. Gen. Acc. Ins. Co. of Am., 266 N.J. Super. 300, 307, 629 A.2d 895 (App.Div. 1991), aff'd, 134 N.J. 1, 629 A.2d 831 (1993), cert. denied, Ins. Co. of N. Amer. v. Morton Intern., Inc., ___ U.S. ___, 114 S.Ct. 2764, 129 L.Ed.2d 878 (1994).
Morton involved extensive litigation concerning claims for insurance coverage brought by the filing of a complaint for declaratory judgment in the Chancery Division seeking indemnity for environmental remediation expenses. Writing for this court, Judge King significantly observed: "The decision was essentially a legal one for the judge." Morton, supra, 266 N.J. Super. at 307, 629 A.2d 895.
*396 The coverage trial may depend to an extent on certain fact issues. We regard the existence of one or more factual issues upon which coverage may depend, such as whether the contamination on the site occurred intentionally or accidentally, as issues ancillary and incidental to and subsumed within the main cause of action for equitable relief in the coverage trial. As stated previously and applicable to the coverage trial as well, the constitutional right to a trial by jury is subject to the inherent equitable jurisdiction to adjudicate ancillary and incidental matters germane to the subject matter of the equitable jurisdiction. Steiner, supra, 2 N.J. at 378-79, 66 A.2d 719; Fleischer, supra, 1 N.J. at 150, 62 A.2d 383; Boardwalk Properties, supra, 253 N.J. Super. at 527, 602 A.2d 733; see also Mantell, supra, 141 N.J. Eq. at 393, 55 A.2d 250.
The orders of July 28, 1995, and August 4, 1994, striking the demands for trial by jury in the liability trial and in the coverage trial, respectively, are affirmed substantially for the reasons expressed by Judge Stanton in his oral opinion of July 28, 1995, as herein supplemented.