170 N.J. Super. 37 (1979)
405 A.2d 474
ECKERD DRUGS OF NEW JERSEY, INC., PLAINTIFF,
v.
S.R. 215, RITE-AID CORP., VINCENT SEVERINO AND THOMAS SYLK, DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
June 14, 1979.
*38 Mr. Dennis M. Reznick for plaintiff (Messrs. Budd, Larner, Kent, Gross, Picillo & Rosenbaum, attorneys).
Mr. Steven P. Perskie for defendant S.R. 215, Severino and Sylk (Messrs. Perskie, Bloom & Zlotnick, attorneys).
Mr. Jack Plackter for defendant Rite-Aid Corp. (Messrs. Horn, Kaplan, Goldberg & Gorny, attorneys).
FRANCIS, A.J.S.C.
Plaintiff Eckerd Drugs of New Jersey, Inc. (Eckerd) has brought suit in the Chancery Division against S.R. 215, Rite-Aid Corp. (Rite-Aid), Vincent Severino and Thomas Sylk over the sale of a drugstore business. Eckerd claims that it had an agreement with S.R. 215 to buy a drugstore business and its assets from the latter, and in contemplation of the sale entered into contracts and took other action consistent with such agreement, but that no executed written contract of sale was ever presented to plaintiff and instead defendant S.R. 215 entered into a written agreement with defendant Rite-Aid, a competitor of Eckerd's. Eckerd demands performance of its agreement with S.R. 215, including restraints on any disposition of the *39 assets of the business in question except in accordance with this agreement; a setting aside of the contract between S.R. 215 and Rite-Aid; delivery to Eckerd of all assets of S.R. 215 in its possession; an accounting of any disposition of such assets, and damages both compensatory and punitive. On motion plaintiff has been permitted to amend its complaint to allege that Rite-Aid deliberately induced S.R. 215 to breach its agreement with plaintiff and is therefore guilty of the tort of intentional interference with an existing contractual relationship between plaintiff and S.R. 215; alleging in the alternative, in the event no contract should be found between plaintiff and S.R. 215, a tortious inference with a prospective economic advantage. By way of relief in this amended complaint plaintiff demands that Rite-Aid sell the assets acquired from S.R. 215 to Eckerd and account to Eckerd for all revenues and profits realized by it since the acquisition, and demands compensatory and punitive damages. As to the issues in the amended complaint, Eckerd demands a trial by jury, and that is the question to be decided here.
N.J.Const. (1947), Art. I, § 9, states that "The right of trial by jury shall remain inviolate." This means that it remains as it was under the prior Constitution of 1844. Ebling Brewing Co. v. Heirloom, Inc., 1 N.J. 71 (1948). The 1844 Constitution was implemented by a 1915 statute, which stated:
If any question, ordinarily determinable at law and requiring a jury trial, arise in a suit of which the court of chancery has jurisdiction, a jury trial, if required, may be ordered, but shall be deemed to be waived unless demanded in the pleadings. If demanded, and the issue be one requiring a jury trial, the court shall send such issue of fact to a court of law for trial according to the existing practice.
Neither this statute nor the present constitutional guarantee is of much assistance in determining whether plaintiff is entitled to a jury trial of the issues raised in the amended complaint. There is no doubt that the tort of interference with prospective *40 economic advantage presents a legal issue and normally entitles a plaintiff to a jury trial. Leslie Blau Co. v. Alfieri, 157 N.J. Super. 173 (App.Div. 1978).
The federal court system, as noted in plaintiff's brief in support of its motion, supports an absolute right to jury trial of legal issues. In Dairy Queen v. Wood, 369 U.S. 469, 82 S.Ct. 894, 8 L.Ed.2d 44 (1962), the trial judge denied a jury trial in a case arising out of a franchising contract where the primary relief sought was restraints and an accounting. Defendant counterclaimed for debt due under the contract together with, or in the alternative, damages for trademark infringement. The trial judge held that either the action was purely equitable or the legal issues raised were incidental to the equitable issues, and that no right to a jury trial existed in either case. The Court of Appeals for the Third Circuit denied mandamus, and the Supreme Court granted certiorari. The court held that in the federal courts the right to trial by jury of legal issues incidental to equitable issues, where properly demanded, may not be lost, and that the legal question of breach of contract must be decided prior to the court's determination of the respondents' equitable claims. In support of its decision the court cited Beacon Theatres, Inc. v. Westover, 359 U.S. 500, 510, 511, 79 S.Ct. 948, 957, 3 L.Ed.2d 988 (1950), for the proposition that "only under the most imperative circumstances, circumstances which in view of the flexible procedures of the Federal Rules we cannot now anticipate, can the right to a jury trial of legal issues be lost through prior determination of equitable claims."
New Jersey practice is rather more enigmatic. The right to a jury trial of legal issues is not necessarily absolute but depends on common law practice. Such a right may be invoked in accordance with R. 4:35-1. Cases decided before the adoption of the 1947 Constitution make it clear that once equity jurisdiction attaches it will be retained in order to avoid a multiplicity of suits:

*41 Ordinarily, the jurisdiction of equity is tested by the facts existing at the inception of the suit; and if the complainant is then entitled to equitable relief, equity's jurisdiction to settle all the issues, even though purely legal in nature, and to award damages for the breach of a legal right involved in the suit, will not be defeated by subsequent events which render equitable relief impracticable or unnecessary or unsuitable. [Mantell v. International Plastic Harmonica Corp., 141 N.J. Eq. 379, 393 (E. & A. 1947)].
This is so even as to some matters traditionally considered to be strictly legal.
The assessment of unliquidated damages has always been deemed the peculiar function of a jury  one that is ordinarily inappropriate to the true province of a Chancellor. But Chancery has such power where the cause is otherwise within its control and the interests of justice will be served by that course. [Middlesex Concrete, etc. Co. v. Northern States Imp. Co., 129 N.J. Eq. 314, 317 (E. & A. 1940), citing Pomeroy's Equity Jurisprudence]
It is, however, clear from older cases that some matters are exclusively cognizable at law, and equity should refrain from intervening until these issues are determined. Questions involving real estate fall within this category. South Amboy v. Pennsylvania R.R. Co., 77 N.J. Eq. 242 (E. & A. 1910); Mason v. Ross, 77 N.J. Eq. 527 (E. & A. 1910).
After the reorganization of the court system several cases addressed the question of the respective jurisdiction of the law and equity sides. Fleischer v. James Drug Stores, 1 N.J. 138 (1948), is similar to the present case with respect to the issues raised and the relief sought. The suit sought specific performance, discovery, an accounting, and damages; there were allegations of breach of contract, malicious interference with a membership agreement and a deprivation of benefits. The case was laid in equity, and the court held that equity could determine the entire controversy and, except where equitable jurisdiction depended on the prior establishment of a right at law, settle purely legal rights and grant legal remedies.
The rationale of the rule that an equitable feature draws the cause completely within the cognizance of equity is the policy of avoiding a multiplicity of suits; and so jurisdiction of the whole controversy may be assumed for the doing of *42 complete justice in the one suit. The constitutional right of trial by jury is, of course, subject to this inherent equitable jurisdiction. Equity has a general jurisdiction to adjudicate ancillary and incidental matters.... It may, in the exercise of a sound discretion, do whatever is necessary to a final adjudication of the entire controversy between the parties, whether it encompasses an action ex delicto or one ex contractu. ... It suffices if the matters to be adjudicated be germane to or grow out of the subject-matter of the equitable jurisdiction. There may be a recovery of the damages ensuing from the wrong which calls for equitable relief. [at 150-151.]
It is clear from Fleischer that Eckerd's case, having been brought in equity, should remain in equity, and indeed there is no claim that any part of the cause is not properly cognizable here. The question, then, is whether a jury trial should nonetheless be allowed as to the questions of tortious interference with either contract or prospective economic advantage and the damage claims pertaining thereto. There is no question of title to land which must be resolved before an equitable resolution can be reached. There is, however, a substantial dispute as to the facts of the alleged tort, and such a dispute will permit the Chancery Division to send the contested issue of fact to a court of law for jury trial. See Hayes v. Smith, 104 N.J. Eq. 146 (E. & A. 1928), and Ebling Brewing Co. v. Heirloom, Inc., supra. Ebling, however, makes it clear that this right to order a jury trial is to be exercised with discretion and only in cases of serious doubt, for the purpose of informing the conscience of the court; except in cases of real difficulty, the court has the duty to decide both the facts and the law. To assist in this duty, the court has the right under R. 4:35-2 to call an advisory jury.
Plaintiff has not contended here that the equitable relief sought is dependent on the prior determination of a legal right, nor has it contended that the legal issues involved are so complex that in good conscience the equity court should refrain from deciding them and give that task to a jury. Indeed, an examination of the complaint, the amended complaint and the facts alleged therein reveals that the legal issues are so closely *43 intertwined with the equitable ones as to be almost indistinguishable. The only new facts alleged in the amended complaint go to Rite-Aid's status as a competitor of Eckerd, and its knowledge of the pre-existing agreement between Eckerd and S.R. 215. The relief demanded in the amended complaint is almost identical to that of the original complaint, the chief difference being that it is demanded directly from Rite-Aid. Clearly, a jury is not qualified to render the equitable relief demanded in the amended complaint; equally clearly a Chancery Division judge is qualified to hear the legal issues presented. Asbestos Fibres Inc. v. Martin Laboratories, Inc., 12 N.J. 233 (1953), states that under the Constitution and the rules of court, the trial court, whether in law or equity, shall fully dispose of equitable issues or others which are not triable as of right to a jury, before or during trial, leaving only purely legal issues for the jury's determination. Plaintiff is clearly not entitled to a jury's determination on the issues of equitable relief contained in the amended complaint. As a practical matter, any attempt to involve a jury in the relatively small segment of this case which would remain to it would be inefficient. Putting aside the practical considerations, however, we believe that this case is fundamentally equitable in nature. The question of Rite-Aid's tortious conduct is ancillary, if not incidental, and the legal remedies demanded are definitely incidental to the equitable demands. Plaintiff has no right to a trial by jury in the case, and its motion is denied. Steiner v. Stein, 2 N.J. 367 (1949), O'Neill v. Vreeland, 6 N.J. 158 (1951). See also, Associated Metals, etc., Corp. v. Dixon Chemical, etc., 82 N.J. Super. 281 (App.Div. 1964).