149 N.J. 278 (1997)
693 A.2d 844
IN RE ENVIRONMENTAL INSURANCE DECLARATORY JUDGMENT ACTIONS.
CIBA-GEIGY CORPORATION, PLAINTIFF-APPELLANT AND CROSS-RESPONDENT,
v.
LIBERTY MUTUAL INSURANCE COMPANY, INSURANCE COMPANY OF NORTH AMERICA, ACCIDENT & CASUALTY INSURANCE COMPANY OF WINTERTHUR, ADMIRAL INSURANCE COMPANY, AETNA CASUALTY & SURETY COMPANY, AGRIPPINA VERSICHERUNGS-AKTIENGESELLSCHAFT, AIU INSURANCE COMPANY, ALBA GENERAL INSURANCE COMPANY LTD., ALLIANZ VERSICHERUNGS-AKTIENGESELLSCHAFT, AMERICAN HOME ASSURANCE COMPANY, AMERICAN RE-INSURANCE COMPANY, AMERICAN STAR INSURANCE COMPANY, ANDREW WEIR INSURANCE COMPANY LTD., ANGLO FRENCH INSURANCE COMPANY LTD., ANGLO SAXON INSURANCE COMPANY LTD., ARGONAUT NORTHWEST INSURANCE COMPANY, ASSICURAZIONI GENERALI DI TRIESTE E. VENEZIA S.P.A., BALOISE FIRE INSURANCE COMPANY, THE BALOISE INSURANCE COMPANY OF AMERICA, BELLEFONTE INSURANCE COMPANY, BERCANUS INSURANCE COMPANY LIMITED, BERMUDA FIRE AND MARINE INSURANCE COMPANY LTD., BIRMINGHAM FIRE INSURANCE COMPANY OF PENNSYLVANIA, BISHOPSGATE INSURANCE COMPANY LTD., THE BRITISH COMMERCIAL INSURANCE COMPANY LTD., BRITISH NATIONAL LIFE INSURANCE SOCIETY LTD., BRITISH & OVERSEAS INSURANCE COMPANY LTD., BRITTANY INSURANCE COMPANY LTD., BRYANSTON INSURANCE COMPANY LIMITED, CALIFORNIA UNION INSURANCE COMPANY, THE CENTRAL NATIONAL INSURANCE COMPANY OF OMAHA, CIA AGRICOLA DE SEGUROS S.A., CITY GENERAL INSURANCE COMPANY LTD., CITIZENS CASUALTY COMPANY OF NEW YORK, CITY INSURANCE COMPANY, CNA REINSURANCE OF LONDON LIMITED, COLONIA VERSICHERUNG AKTIENGESELLSCHAFT, COLUMBIA CASUALTY COMPANY, COMPAGNIE BELGE D'ASSURANCES GENERALES INCENDIE ACCIDENTS ET RISQUES *279 DIVERS, COMPAGNIE EUROPEENNE D'ASSURANCES INDUSTRIELLES S.A., CONTINENTAL CASUALTY COMPANY, DART AND KRAFT INSURANCE COMPANY LTD., DART INSURANCE COMPANY LIMITED, DELTALLOYD NON-LIFE INSURANCE COMPANY LTD., THE DOMINION INSURANCE COMPANY LTD., THE DRAKE INSURANCE COMPANY LTD., ECONOMIC INSURANCE COMPANY LTD., EDINBURGH ASSURANCE COMPANY LTD., EL PASO INSURANCE COMPANY LIMITED, EMPLOYERS MUTUAL CASUALTY INSURANCE COMPANY, ENGLISH AND AMERICAN INSURANCE COMPANY LTD., EURINCO ALLGEMEINE VERSICHERUNGS A.G., EUROPEAN GENERAL REINSURANCE COMPANY LTD., EUROPEAN GENERAL REINSURANCE COMPANY, LTD., OF ZURICH, EXCESS INSURANCE COMPANY LTD., EXCESS MUTUAL REINSURANCE COMPANY, FEDERAL INSURANCE COMPANY, FIDELIDADE INSURANCE COMPANY, THE FIDELITY AND CASUALTY COMPANY OF NEW YORK, FIREMAN'S FUND INSURANCE COMPANY, FIRST STATE INSURANCE COMPANY, GERLING-KONZERN ALLEGEMEINE VERSICHERUNGS-AKTIENGESELLSCHAFT, GIBRALTER CASUALTY COMPANY, GRANITE STATE INSURANCE COMPANY, GREAT AMERICAN INSURANCE COMPANY, GUILDHALL INSURANCE COMPANY LTD., HAFTPFLICHTVERBAND DER DEUTSCHEN INDUSTRIE V.A.G., HARBOR INSURANCE COMPANY, HAWK INSURANCE COMPANY LTD., HELVETIA ACCIDENT SWISS INSURANCE COMPANY LTD., HELVETIA GENERAL INSURANCE COMPANY LTD., HIGHLANDS INSURANCE COMPANY, HOME & OVERSEAS INSURANCE COMPANY, LTD., THE HOME INSURANCE COMPANY, INSCO LTD., INSURANCE COMPANY OF STATE OF PENNSYLVANIA, INTEGRITY INSURANCE COMPANY, INTERSTATE FIRE & CASUALTY COMPANY, LEXINGTON INSURANCE COMPANY, LONDON AND EDINBURGH GENERAL INSURANCE COMPANY, LTD., LONDON AND EDINBURGH INSURANCE CO., LTD.  NOW MERCURY INSURANCE HOLDINGS LTD., THE LONDON & OVERSEAS INSURANCE COMPANY LTD., LOUISVILLE INSURANCE COMPANY LTD., LUDGATE INSURANCE COMPANY LTD., LUMBERMENS MUTUAL CASUALTY COMPANY, MEAD REINSURANCE CORPORATION, THE MERCANTILE AND GENERAL REINSURANCE COMPANY LTD., MIDLAND INSURANCE COMPANY, MINSTER INSURANCE COMPANY LTD., MUTUAL REINSURANCE COMPANY LTD., NATIONAL CASUALTY COMPANY, NATIONAL CASUALTY COMPANY, LTD., NATIONAL CASUALTY *280 COMPANY, (OF DETROIT), NATIONAL CASUALTY COMPANY OF AMERICA LTD., NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, NEW ENGLAND INSURANCE COMPANY, NEW LONDON REINSURANCE COMPANY LIMITED, NORTH ATLANTIC INSURANCE COMPANY LIMITED, ORION INSURANCE COMPANY LTD., PACIFIC INSURANCE COMPANY, PINE TOP INSURANCE COMPANY, PRUDENTIAL REINSURANCE COMPANY, PURITAN INSURANCE COMPANY, FOR ITSELF AND AS SUCCESSOR TO THE MANHATTAN FIRE AND MARINE INSURANCE COMPANY BY CHANGE OF NAME, RIVER THAMES INSURANCE COMPANY LTD., REPUBLIC INSURANCE COMPANY, ROYAL INSURANCE COMPANY OF AMERICA, ROYAL SCOTTISH INSURANCE COMPANY LTD., SAFETY MUTUAL CASUALTY CORPORATION, SCOTTISH LION INSURANCE COMPANY LTD., SOUTHERN AMERICAN INSURANCE COMPANY, SOVEREIGN MARINE AND GENERAL INSURANCE COMPANY LTD., THE SPHERE INSURANCE COMPANY LTD., ST. HELEN'S INSURANCE COMPANY LTD., ST. KATHERINE INSURANCE COMPANY LTD., ST. PAUL FIRE AND MARINE INSURANCE COMPANY, STRONGHOLD INSURANCE COMPANY LIMITED, SWISS REINSURANCE COMPANY, SWISS UNION GENERAL INSURANCE COMPANY LTD., SWITZERLAND GENERAL INSURANCE COMPANY LIMITED, TERRA NOVA INSURANCE COMPANY LTD., TRENT INSURANCE COMPANY LTD., TUREGUM INSURANCE COMPANY, TWIN CITY FIRE INSURANCE COMPANY, UNDERWRITERS AT LLOYD'S LONDON, UNIGARD MUTUAL INSURANCE COMPANY, UNIONAMERICA INSURANCE COMPANY LTD., UNITED STANDARD INSURANCE COMPANY LTD., THE VICTORY INSURANCE COMPANY LTD., WALBROOK INSURANCE COMPANY LTD., "WINTETHUR" SWISS INSURANCE COMPANY, WORLD AUXILIARY INSURANCE CORPORATION, LTD., YASUDA FIRE & MARINE INSURANCE COMPANY (U.K.) LIMITED, YUVAL INSURANCE COMPANY LTD., ZURICH INSURANCE COMPANY, DEFENDANTS, AND COMMERCIAL UNION INSURANCE COMPANY, AS SUCCESSOR TO THE OCEAN ACCIDENT & GUARANTEE CORPORATION, LTD., AMERICAN EMPLOYERS' INSURANCE COMPANY, THE EMPLOYERS' LIABILITY ASSURANCE CORPORATION, LTD., EMPLOYERS' SURPLUS LINES INSURANCE COMPANY, GENERAL REINSURANCE CORPORATION, *281 ALLSTATE INSURANCE COMPANY, AS SUCCESSOR-IN-INTEREST TO NORTHBROOK EXCESS AND SURPLUS INSURANCE COMPANY, FORMERLY NORTHBROOK INSURANCE COMPANY, NORTH STAR REINSURANCE CORPORATION, AND ZURICH INTERNATIONAL LIMITED, DEFENDANTS-RESPONDENTS AND CROSS-APPELLANTS, AND CENTURY INDEMNITY COMPANY (AS SUCCESSOR TO CCI INSURANCE COMPANY, WHICH ITSELF IS THE SUCCESSOR TO THE INSURANCE COMPANY OF NORTH AMERICA), DEFENDANT-RESPONDENT.
GEI INTERNATIONAL INCORPORATED, A NEW JERSEY CORPORATION, (FORMERLY KNOWN AS ANDREW DENHOLM, INC.), AND ANDREW DENHOLM, INC., PLAINTIFFS-APPELLANTS,
v.
ST. PAUL FIRE AND MARINE INSURANCE COMPANY, FEDERAL INSURANCE COMPANY, ATLANTIC MUTUAL INSURANCE COMPANY, NORTHWESTERN NATIONAL INSURANCE COMPANY, MIDLAND INSURANCE COMPANY, CHUBB GROUP OF INSURANCE COMPANIES, FIREMAN'S FUND INSURANCE CO., INC., IDEAL MUTUAL INSURANCE CO., INC., ORB HOLDING CO., JOHN BLACK, ROBERT DEDERER, FRANK VANDERHOOF, METRAMATIC CORPORATION, HIGH SPEED CHECKWEIGHER INC., SUCCESSOR IN INTEREST TO METRAMATIC CORPORATION, AG FUR PRAZISIONSINSTRUMENTE AND NEW JERSEY PROPERTY/LIABILITY GUARANTY ASSOCIATION, DEFENDANTS. JOHN BLACK, ROBERT DEDERER AND FRANK VANDERHOOF, INDIVIDUALLY AND AS FORMER CORPORATE OFFICERS, DIRECTORS AND SHAREHOLDERS OF NGR DESIGN AND MANUFACTURING CO., INC. AND METAL DETECTORS, INC., METRAMATIC CORPORATION AND ORB HOLDING CO., DEFENDANTS AND THIRD PARTY PLAINTIFFS,
v.
FIREMAN'S FUND INSURANCE CO., INC., ST. PAUL MERCURY INSURANCE COMPANY, NORTHWESTERN NATIONAL INSURANCE CO., AND NEW JERSEY PROPERTY/LIABILITY GUARANTY ASSOCIATION, THIRD-PARTY DEFENDANTS.
The Supreme Court of New Jersey.
Argued September 9, 1996.
Decided May 12, 1997.
*284 Robert Mahoney argued the cause for appellants GEI International Incorporated, etc., et al. (Friedman Siegelbaum, attorneys; *285 Mr. Mahoney and James M. Andrews, of counsel and on the brief).
Vincent R. FitzPatrick, Jr., a member of the New York bar, argued the cause for appellant and cross-respondent Ciba-Geigy Corporation (Hayden, Perle & Silber, attorneys).
James W. Christie, III, argued the cause for respondents and cross-appellants Commercial Union Insurance Company, as successor to The Ocean Accident & Guarantee Corporation, Ltd.; The Employers' Liability Assurance Corporation, Ltd.; American Employers' Insurance Company; and Employers' Surplus Lines Insurance Company (Christie, Pabarue, Mortensen and Young, attorneys).
Stefano V. Calogero argued the cause for respondents and cross-appellants General Reinsurance Corporation, North Star Reinsurance Corporation, Allstate Insurance Company, as successor in interest to Northbrook Excess and Surplus Insurance Company, formerly Northbrook Insurance Company and Zurich International Limited (Cuyler Burk, attorneys).
Paul R. Koepff, a member of the New York bar, argued the cause for respondent Century Indemnity Company (as successor to CCI Insurance Company, which itself is the successor to the Insurance Company of North America) (Graham, Curtin & Sheridan, attorneys).
Paul E. Breene submitted briefs on behalf of amicus curiae, New Jersey Public Risk Managers' Association (Anderson Kill Olick & Oshinsky, attorneys; Mr. Breene and Jennifer D. Marell, of counsel).
The opinion of the Court was delivered by POLLOCK, J.
*286 These appeals pose the issue whether a constitutional right to a jury trial exists in an action for a declaratory judgment concerning claims against insurers for breach of contract and the recovery of future remediation costs. Resolution of the issue depends on whether such an action is more like a traditional common-law action for damages or one for equitable relief.
In Ciba-Geigy v. Liberty Mutual Insurance Co., plaintiff Ciba-Geigy Corporation ("Ciba-Geigy") sued its insurers seeking a judgment declaring that the insurers are obligated to defend and indemnify it for future costs of environmental remediation. Ciba-Geigy also seeks compensatory damages for remediation costs that it has already incurred. The Law Division granted Ciba-Geigy's motion, in which the insurers initially joined, for a jury trial.
On March 6, 1996, defendant Century Indemnity Company ("Century"), changed its position and moved for a trial by the court without a jury. Defendants Unigard Security Insurance Company and Great American Insurance Company joined Century's motion. Ciba-Geigy and five other insurers, Commercial Union Insurance Company ("Commercial"), General Reinsurance Company ("General Reinsurance"), North Star Reinsurance Corporation, Allstate Insurance Company, and Zurich International Limited, opposed the motion. The Law Division granted Century's motion.
The Appellate Division denied Ciba-Geigy's motion for leave to appeal and to stay the trial. We granted leave to appeal. 144 N.J. 373, 676 A.2d 1089 (1996). Thereafter, we granted leave for Commercial and General Reinsurance, which oppose Century's motion to strike Ciba-Geigy's jury demand, to participate in this appeal. 145 N.J. 369, 678 A.2d 711 (1996).
*287 In GEI Int'l Corp. v. St. Paul Fire and Marine Ins. Co., GEI, like Ciba-Geigy, seeks a judgment declaring that its insurers are obligated to indemnify it for all future environmental remediation costs and expenses. GEI also seeks money damages for breach of the policy because of the insurers' failure to reimburse it for the clean-up costs it has incurred to date. The Law Division bifurcated the claims for environmental coverage and liability.
In both the liability and coverage actions, GEI and two insurers, Chubb Group of Insurance Companies ("Chubb Group") and Federal Insurance Company ("Federal"), demanded a jury. Two other insureds, Hi-Speed Checkweigher and A.G. fur Prazisionsinstrumente ("AG"), moved to strike GEI's demand for a jury trial in the liability phase. The Law Division struck all demands for a jury trial. The Appellate Division affirmed. 287 N.J. Super. 385, 396, 671 A.2d 171 (1996).
We granted GEI's motion for leave to appeal that part of the Appellate Division's order holding that the parties have no right to a jury trial on the environmental coverage claim. 144 N.J. 373, 676 A.2d 1089 (1996).
We hold that an action by an insured against an insurer for a declaratory judgment to compel indemnification for future environmental clean-up costs is substantially an action for specific performance, to which a right to trial by jury does not attach. We further hold that when an insured's claim to recover damages for past environmental remediation costs is ancillary to the insured's claim for specific performance, the entire matter should be resolved in a non-jury trial. Consequently, we affirm the order of the Appellate Division in GEI and the order of the Law Division in Ciba-Geigy.

*288 I.
The relevant facts in both cases are undisputed. Ciba-Geigy is one of five cases consolidated under the general heading of "In re Environmental Insurance Declaratory Judgment Actions." The Ciba-Geigy action, which was filed in 1987, involves numerous policies, some of which were issued nearly half-a-century ago. According to Ciba-Geigy, it is subject to claims from governmental agencies, such as the Environmental Protection Agency ("EPA") and the Department of Environmental Protection ("DEP"), for alleged environmental pollution at several industrial sites. Ciba-Geigy seeks indemnification for liability that arises from environmental remediation at those sites.
From 1952 through 1986, the defendant-insurers issued primary, excess, and umbrella Comprehensive General Liability ("CGL") policies to Ciba, Geigy, Toms River Chemical Corporation and their successor, Ciba-Geigy Corporation ("Ciba-Geigy"). Ciba-Geigy submitted claims under the policies to recover environmental remediation costs. Ciba-Geigy maintains that the environmental pollution claims involve personal injury or property damage caused by an "accident" or "occurrence" within the meaning of the policies and during the policy periods. The insurers have denied Ciba-Geigy's claims on the grounds that either: (1) Ciba-Geigy "expected or intended" to cause the damage; (2) the underlying claims did not arise out of an "accident" or "occurrence"; or (3) at the time the policies were issued, Ciba-Geigy knew of the pollution damage for which it now seeks coverage.
Ciba-Geigy subsequently commenced this action, seeking coverage for over 100 underlying sites located in thirty states. It asks each insurer to defend and indemnify it for future liability and to compensate it for costs already incurred. Ciba-Geigy estimates *289 that the costs incurred at various sites approximate $400 million. It estimates further that its future liability will exceed $1 billion. Ciba-Geigy seeks a declaratory judgment that the insurers must indemnify it for those future costs.
The trial court limited this phase of the coverage litigation to all of Ciba-Geigy's sites in New Jersey, principally its dye- and resinmanufacturing plant in Toms River. Ciba-Geigy seeks approximately $125 million in compensatory damages for the Toms River site. It also requests an order that the insurers pay for all future costs, approximately $400 million. After resolution of the claims for coverage for the New Jersey sites, the parties will address Ciba-Geigy's claims for coverage concerning the numerous other sites located outside of New Jersey.
One issue at trial will be whether Ciba-Geigy "expected or intended" the environmental pollution at the Toms River site. If so, Ciba-Geigy is not entitled to coverage at the Toms River site, and perhaps certain other sites in New Jersey. If not, the trial court will resolve numerous other coverage issues concerning the Toms River site, including the time when the alleged property damage occurred and the effect of the "owned property exclusion." Another critical issue for some of the carriers is whether they have a duty to defend Ciba-Geigy.
The Law Division in Ciba-Geigy initially ordered a jury trial. Before the trial commenced, however, the Appellate Division rendered the GEI decision. Relying on that decision in the Ciba-Geigy action, the Law Division granted Century's motion for a non-jury trial. It reasoned that the issues and claims for relief in environmental coverage actions are "unique, different, and above all very complex and complicated." The court also stated that the case was "not a typical breach of contract case" and was "unknown in common law."
*290 GEI's claims are like those asserted by Ciba-Geigy. The claims arise primarily from ground water contamination at a manufacturing facility in Roxbury Township that a former wholly-owned subsidiary of GEI, Metramatic, operated from 1983 to 1988. Before 1983, defendants Black, Dederer and Vanderhoof were shareholders of Metramatic. Their general partnership, defendant ORB, owned the site. In March 1983, ORB transferred title to the real estate to Metramatic, and GEI purchased the Metramatic stock.
When GEI sold the Metramatic stock to AG, the sale triggered the Environmental Cleanup Responsibility Act ("ECRA"), now known as the Industrial Site Recovery Act ("ISRA"), N.J.S.A. 13:1K-6 to -35. Compliance with ECRA required GEI to conduct a full investigation to determine the possible existence of hazardous contamination and the necessity for environmental remediation. That investigation disclosed substantial ground water contamination. To date, the cost of clean-up has exceeded $2 million. As the clean-up continues, the costs will mount.
GEI submitted claims against its CGL and excess-insurance carriers to recover the costs of investigation and remediation of the groundwater contamination. The carriers disclaimed coverage, relying in part on pollution-exclusion clauses. GEI then filed this action, alleging that the insurers had breached their policy. It seeks a judgment for monies spent to date and for a declaration that the insurers are liable for the continuing cost of remediation.
GEI also seeks contribution under the Spill Compensation and Control Act ("Spill Act"), N.J.S.A. 58:10-23.11 to -23.11z, from other owners and operators of the site. The Law Division bifurcated the claims, determining that the contribution claims under the Spill Act would be litigated in the first trial and the coverage claims against the insurers in the second trial.
GEI, along with two defendant-insurers, Chubb Group and Federal, demanded a jury in both trials. The Law Division struck the demands. It ruled that GEI's claim for coverage, despite the *291 demand for money damages, essentially sought specific performance.
The Appellate Division affirmed. 287 N.J. Super. 385, 671 A.2d 171 (1996). The court held that no right to a jury trial attached either to the claim for contribution under the Spill Act or to the claim for coverage. Id. at 392-95, 671 A.2d 171. GEI has not appealed from the court's determination that the right to trial by jury did not attach to the contribution action. It appeals only from the denial of a jury trial on the coverage claim.
The Appellate Division characterized a declaratory judgment action against an insurance company seeking to compel indemnification for environmental clean-up costs as an equitable action for specific performance. Ibid. So characterized, the action should be determined by the court sitting without a jury. Ibid. The court acknowledged that the coverage dispute involved the determination of factual issues, such as whether the contamination occurred intentionally or accidentally. Those issues, however, were "ancillary and incidental to and subsumed within the main cause of action for equitable relief in the coverage trial." Id. at 396, 671 A.2d 171.

II.
Article I, Paragraph 9 of the 1947 New Jersey Constitution provides that "[t]he right of trial by jury shall remain inviolate." N.J. Const. art. 1, ¶ 9. This provision guarantees the right to trial by jury as it existed at common law at the time of the adoption of the New Jersey Constitution. Weinisch v. Sawyer, 123 N.J. 333, 343, 587 A.2d 615 (1991); In re LiVolsi, 85 N.J. 576, 587, 428 A.2d 1268 (1981). Traditionally, the right to a jury trial attaches in legal, but not equitable, actions. Weinisch, supra, 123 N.J. at 343, 587 A.2d 615.
In federal courts, the Seventh Amendment to the United States Constitution guarantees the right to a jury trial in civil cases. Minneapolis & St. Louis R.R. v. Bombolis, 241 U.S. 211, *292 36 S.Ct. 595, 60 L.Ed. 961 (1916). The Seventh Amendment right to a jury trial, however, is not binding on the states. Id. at 217, 36 S.Ct. at 596, 60 L.Ed. at 963. Thus, the right to a trial by jury in New Jersey must arise under either a statute or the state constitution. Shaner v. Horizon Bancorp., 116 N.J. 433, 435-36, 561 A.2d 1130 (1989).
Declaratory judgment actions were unknown at common law. In New Jersey, the Uniform Declaratory Judgments Act (the "Act"), N.J.S.A. 2A:16-50 to -62, governs the right to declaratory relief. The Act does not specifically state when the right to a jury trial attaches to an action for a declaratory judgment. Instead, the Act provides that factual issues "may be tried and determined in the same manner as issues of facts are tried and determined in other civil actions...." N.J.S.A. 2A:16-58. Depending on the issue, a declaratory judgment can be either legal or equitable. See Utility Blade & Razor Co. v. Donovan, 33 N.J. Super. 566, 572, 111 A.2d 300 (App.Div. 1955) (explaining that declaratory relief is traditionally "neither equitable nor legal in its nature ... [but] takes on the color of either, depending upon the issue"); see also Government Employees Ins. Co. v. Butler, 128 N.J. Super. 492, 495, 320 A.2d 515 (Ch.Div. 1974) (same). Thus, the filing of a declaratory judgment action for insurance coverage does not necessarily engender the right to a jury trial. In a declaratory judgment action, the right to a jury trial depends on whether the action is the counterpart to one in equity or in law.
By comparison, a right to trial by jury in a declaratory judgment action in the federal courts may be demanded under the circumstances and in the manner provided by the Federal Rules of Civil Procedure. 28 U.S.C.A. § 2201; Fed.R.Civ.P. 57. As in the New Jersey courts, the right to a jury trial in federal courts depends on whether a claim is legal or equitable. 22A Am.Jur.2d Declaratory Judgments § 230 (1988). If a claim is equitable, no right to trial by jury attaches. Ross v. Bernhard, 396 U.S. 531, 533, 90 S.Ct. 733, 735, 24 L.Ed.2d 729, 733 (1970).
*293 In determining whether GEI's and Ciba-Geigy's declaratory judgment actions are primarily legal or equitable, "we look to the historical basis for the cause of action and focus on the requested relief." Weinisch, supra, 123 N.J. at 343, 587 A.2d 615. Of the two, the more persuasive factor is the requested relief. Ibid.
For example, the right to a trial by jury does not attach to an insured's action against an insurer and its insurance agent for their failure to advise the insured of available coverage. Id. at 342-43, 587 A.2d 615. The relief requested in such an action is reformation of the insurance policy, an equitable remedy. Ibid. We also have held that absent an express statutory provision, a claimant is not entitled to a jury trial in an action under the Law Against Discrimination ("LAD"), N.J.S.A. 10:5-1 to -42, because the relief available under the LAD is predominately equitable in nature. Shaner, supra, 116 N.J. at 453, 561 A.2d 1130. In response, the Legislature amended the relevant statute, N.J.S.A. 10:5-3, to provide that a person could assert a claim for damages based on the LAD. L. 1992, c. 146, § 1.
Here, the Appellate Division characterized Ciba-Geigy's requests for declaratory judgments as actions for specific performance. As a claim for equitable relief, specific performance does not trigger a right to a jury trial. See, e.g., Barry M. Dechtman, Inc. v. Sidpaul Corp., 89 N.J. 547, 552, 446 A.2d 518 (1982) (stating that specific performance rested on equitable principles); LiVolsi, supra, 85 N.J. at 590 n. 12, 428 A.2d 1268 (1981) (holding "[i]n purely equitable matters there is no right to a jury even if both parties want one"); Brady v. Cartaret Realty Co., 70 N.J. Eq. 748, 751, 64 A. 1078 (E.& A. 1906) (holding that there was no right to jury trial when equity provided a remedy because legal remedy was inadequate), aff'd, 72 N.J. Eq. 904, 67 A. 606 (E.& A. 1907).
A declaratory judgment action, although it ultimately may result in the payment of money, is not necessarily an action of law. GEI's and Ciba-Geigy's complaints seek judgments mandating that the defendant-insurers defend and indemnify them for the future costs of environmental remediation. Such a request, which *294 seeks an order to compel an insurer to discharge future obligations under its policy, is sufficiently like an action for specific performance to withstand a demand for a jury trial. 11 Samuel Williston, A Treatise on the Law of Contracts § 1418 (3d ed. 1968 & Supp. 1996) (explaining that specific performance seeks an order compelling a party substantially to perform).
GEI and Ciba-Geigy seek orders compelling the insurers to perform their contractual obligations, relief made necessary by the inadequacy of a remedy at law. Although the essential nature of an action as legal or equitable may not be clear, specific performance is appropriate if it will "do more perfect and complete justice." Fleischer v. James Drug Stores, 1 N.J. 138, 146, 62 A.2d 383 (1948). For nearly half a century, the test, although it could be more specific, has served to distinguish actions in equity from those at law. Moreover, we anticipate no wholesale revision of the traditional right to a jury trial in declaratory-judgment actions involving insurance policies. We go no further than to hold that a jury need not decide the present actions, which involve unique questions concerning insurance for the remediation of environmental harm.
Specific performance also is appropriate when relief at law, money damages, provides inadequate compensation for the breach of an agreement. Ibid.; Mantell v. International Plastic Harmonica Corp., 141 N.J. Eq. 379, 390, 55 A.2d 250 (E.& A. 1947). An award of money damages in these cases would be inadequate. As the Law Division in Ciba-Geigy recognized, the issues in environmental coverage actions are uniquely complex. Ciba-Geigy asserts five claims for relief, seeking coverage for its liability to clean up over a hundred sites, located in thirty states. In several counts, Ciba-Geigy seeks the ability to designate which of its many policies from several insurers would be triggered. Characterization of the cause of action depends on the dominant relief sought and the nature of the proceeding that would provide the most complete resolution of the issues. In other contexts, the complexity of environmental coverage actions has led to creative *295 procedural responses. See Westinghouse Elec. Corp. v. Liberty Mut. Ins. Co., 233 N.J. Super. 463, 478-79, 559 A.2d 435 (App.Div. 1989) (remanding case involving 3,000 claims in more than twenty states for trial in a single forum, finding that "[w]e understand that ultimately the [environmental] coverage questions may be fact-sensitive and that site-specific factual findings may have ... to be made").
Moreover, if left to their legal remedy, Ciba-Geigy and GEI would be required to file multiple future breach-of-contract actions each time an insurer refuses to defend or indemnify them. Only specific performance can place Ciba-Geigy and GEI in the position they assert they would have been, had the defendant-insurers performed their contractual obligations.
As the doctrine of ancillary equitable jurisdiction illustrates, avoidance of a multiplicity of lawsuits appropriately limits the right to a jury trial. If an action is primarily equitable, a court of equity may assume jurisdiction over ancillary legal issues. Fleischer, supra, 1 N.J. at 150, 62 A.2d 383. The exercise of ancillary equitable jurisdiction avoids a multiplicity of actions and permits a court to do complete justice. See Eckerd Drugs v. S.R. 215 Rite-Aid, 170 N.J. Super. 37, 41, 405 A.2d 474 (Ch.Div. 1979) (noting that once equity jurisdiction attaches it may be retained in order to avoid multiplicity of suits even if suit includes some matters traditionally considered to be strictly legal). In addition, specific performance is particularly appropriate when, as here, the claim involves a continuing right to future benefits that cannot be satisfied by a one-time monetary payment. See, e.g., Manetti v. Prudential Property & Cas. Ins. Co., 196 N.J. Super. 317, 321-22, 482 A.2d 520 (App.Div. 1984) (reasoning that nature of personal injury protection benefits is such that they may give rise to ongoing or recurring disputes). A contrary result would lead to a fragmentation of issues and a waste of judicial resources. Id. at 40-41, 405 A.2d 474. The hallmark of a modern system of justice is designation of a single forum to decide all matters in controversy. *296 Brennan v. Orban, 145 N.J. 282, 293, 678 A.2d 667 (1996). A jury simply could not grant all the relief that Ciba-Geigy seeks.
Ciba-Geigy and GEI cannot convert their claims into actions at law simply by placing a monetary figure on their requests for declaratory relief. Both Ciba-Geigy and GEI seek substantial future damages. The amount of the damages, however, are both uncertain and unknown. When a court cannot reasonably ascertain the amount of damages, specific performance emerges as the more appropriate remedy. Fleischer, supra, 1 N.J. at 146-47, 62 A.2d 383 (holding that damages were not adequate compensation for breach of co-operative contract designed to place retail druggists on competitive level with well-known chain pharmacies, in part because damages were immeasurable); American Assoc. of Univ. Professors v. Bloomfield College, 136 N.J. Super. 442, 346 A.2d 615 (App.Div. 1975) (reasoning that dismissed college faculty members were entitled to specific performance of reinstatement because of uncertainty in measuring damages).
Contrary to the dissent, however, we do not rely on an "award of a finite amount" as the predicate for the right to a jury trial. (Post, at 305, 693 A.2d at 857). In the present cases, the insureds seek more. They seek an order directing the insurers to reimburse them for the future cost of environmental remediation. Because those breaches have not yet occurred, the insureds' damages are not calculable. As previously stated, the award of money damages cannot constitute adequate relief.
Commercial Union argues that Morton Int'l, Inc. v. General Accident Ins. Co., 134 N.J. 1, 629 A.2d 831 (1993), cert. denied, 512 U.S. 1245, 114 S.Ct. 2764, 129 L.Ed.2d 878 (1994), requires a reversal of the judgment of the Appellate Division in GEI. We disagree. True, Morton held that under the CGL policies at issue in that case, environmental-remediation expenses constituted "damages." Id. at 27, 629 A.2d 831. Morton, however, concerned the interpretation of "damages" within the policies, not a determination whether the requested relief was legal or equitable. Unlike *297 GEI and Ciba-Geigy, Morton sought compensation only for the clean-up and remediation costs for which it had already been held liable in a prior proceeding. Id. at 9, 629 A.2d 831. Morton did not ask the Chancery Division to compel its insurers to indemnify it for any future costs. Consequently, Morton does not compel the conclusion that the parties in the present case have a right to trial by jury.
Nor does the conclusion that the present action should proceed in a non-jury trial contradict the holding of the Appellate Division in Chiacchio v. Chiacchio, 198 N.J. Super. 1, 5, 486 A.2d 335 (App.Div. 1984). In Chiacchio, the underlying action was one for divorce in which the wife sought recovery for personal injuries arising out of the husband's alleged acts of extreme cruelty. The husband filed a third-party complaint seeking coverage from his homeowner's insurer. The Appellate Division held that "[a]n action for a declaratory judgment as to the rights of parties to an insurance policy is basically an action for the construction of a contract generally cognizable before the law courts." Id. at 5, 486 A.2d 335. It transferred the husband's claim for indemnification to the Law Division for a trial by jury. The court reasoned that the husband's request for indemnification from his insurer did not arise out of the marital relationship that underlay the wife's divorce and tort actions. Id. at 6, 486 A.2d 335.
Chiacchio, unlike GEI and Ciba-Geigy, involved a claim for a fixed amount for a past wrong, not a claim for costs to be incurred in the future. Our recent decision in Brennan v. Orban, supra, moreover, suggests limits on the appropriateness of transferring an indemnification claim from the Family Part to the Law Division. Brennan recognized that the Family Part could better manage as part of a single case claims as distinct as those for divorce and marital torts. Brennan, supra, 145 N.J. at 304, 678 A.2d 667. Similarly, in the present actions, the demands for declaratory relief, although arising out of the insurers alleged breach of contract, may be so imbued with claims for equitable *298 relief that management by a single judge is the only sensible answer.
We limit our holding to declaratory judgment actions for insurance coverage for the recovery of future environmental remediation costs. The predominance of equitable issues and complexity of the underlying action distinguishes those actions from coverage actions under other kinds of insurance policies. We do not reach the broader question concerning the extent to which the right to a jury trial attaches to actions for coverage on other kinds of insurance policies. See Steiner v. Stein, 2 N.J. 367, 371, 66 A.2d 719 (1949) (holding that in "actions for breach of contract ... the parties are entitled to a trial by jury as of right").

III.
Historically, moreover, environmental-insurance coverage actions for the recovery of future remediation costs were unknown in 1776, when New Jersey adopted its first constitution. Without statutory authorization, a right to trial by jury does not attach to a claim if the claim did not exist at common law. Shaner, supra, 116 N.J. at 447, 561 A.2d 1130; Montclair v. Stanoyevich, 6 N.J. 479, 487-88, 79 A.2d 288 (1951). To this extent, Ciba-Geigy and GEI assert a cause of action and seek relief that was unknown at common law. See LiVolsi, supra, 85 N.J. at 587-88, 428 A.2d 1268 (holding that attorneys did not have absolute right to trial by jury in fee dispute cases before adoption of the 1947 Constitution); Ebling Brewing Co. v. Heirloom, Inc., 1 N.J. 71, 78, 61 A.2d 885 (1948) (reasoning that jurisdiction of Chancery Court to appoint statutory receiver of insolvent corporation existed before adoption of 1844 Constitution); Boardwalk Properties, Inc. v. BPHC, 253 N.J. Super. 515, 530, 602 A.2d 733 (App.Div. 1991) (finding that New Jersey Antitrust Act did not replace common law causes of action that were triable to jury); Manetti, supra, 196 N.J. Super. at 320, 482 A.2d 520 (holding that statutory personal injury protection benefits did not exist at common law and were not subject to right of jury trial); Peterson v. Albano, 158 N.J. Super. *299 503, 506, 386 A.2d 873 (App.Div.), certif. denied, 78 N.J. 337, 395 A.2d 205 (1978) (finding that right to a jury trial in summary dispossess action existed at common law when Constitution of 1776 was adopted); Kugler v. Banner Pontiac-Buick, Opel, Inc., 120 N.J. Super. 572, 582, 295 A.2d 385 (Ch.Div. 1972) (holding that claims under Consumer Fraud Act were completely unknown to common law).
Appellants argue that environmental-insurance-coverage disputes for the recovery of future remediation costs are no different than other insurance coverage disputes and breach-of-contract actions generally. See Guy v. Petty, 275 N.J. Super. 536, 544, 646 A.2d 546 (Law Div. 1993) ("A civil litigant may demand a jury trial if the same or highly analogous action entitled one to a jury trial when the people adopted their constitution."). In one sense, declaratory judgments concerning environmental insurance policies may be the heir of more commonplace declaratory-judgment actions for coverage. Ordinarily, an action for the declaration of parties' rights under an insurance policy is considered to be a contractual obligation cognizable in a court of law and, therefore, generally subject to trial by jury. See Paul v. Ohio Cas. Ins. Co., 196 N.J. Super. 286, 289 n. 1, 482 A.2d 199 (App.Div. 1984), certif. denied, 99 N.J. 228, 491 A.2d 718 (1985) (holding that declaratory judgment actions seeking interpretation of insurance policies involved primarily legal rights and belonged in Law Division); Government Employees, supra, 128 N.J. Super. at 496, 320 A.2d 515 (reasoning that action for the declaration of the parties' rights under insurance policy was basically action for construction of a contract cognizable before the law courts).
Declaratory judgment actions against insurers for the recovery of future environmental remediation costs, however, differ from claims asserted in eighteenth-century litigation. No one dreamt in 1776 of environmental torts or claims for contribution under environmental statutes. Similarly, disputes between an insured and an insurer concerning future coverage for environmental *300 remediation costs were not cognizable before the adoption of any of this State's constitutions.
Also supporting a non-jury trial in the present action is the proposition that the underlying claim, remediation, is not subject to trial by jury. Weinisch, supra, 123 N.J. at 343, 587 A.2d 615; Asbestos Fibres, Inc. v. Martin Lab., 12 N.J. 233, 239-40, 96 A.2d 395 (1953). Remediation is a form of equitable relief that can require continuing supervision. Although questions pertaining to insurance coverage are separate from those pertaining to remediation, a single judge can resolve all questions in both proceedings sensibly and justly. In sum, insurance-coverage actions for the recovery of the costs of environmental remediation are sufficiently different from many other declaratory judgment actions to support the distinction between them.

IV.
The gravamen of GEI's and Ciba-Geigy's complaints is their request for specific performance of their insurance policies to compensate them for future costs of remediation. For example, at the Toms River site alone, Ciba-Geigy seeks more than $400 million in estimated future remediation costs. It also seeks $125 million as compensation for costs already incurred. That sum, although substantial, is but a fraction of the estimated remediation costs.
Because GEI and Ciba-Geigy primarily seek specific performance of the insurers' duties under their policies, we need not decide whether the right to trial by jury would attach to a claim limited to compensation for already-incurred costs. The claim to recover those costs rides in the wake of the claim for specific performance. Once a court of equity assumes jurisdiction over a cause, it may resolve all other issues that "are germane to or grow out of the subject-matter of the equitable jurisdiction." Fleischer, supra, 1 N.J. at 150, 62 A.2d 383; see also Steiner, supra, 2 N.J. at 373, 66 A.2d 719 ("It has long been a cardinal principle of equity that once [a court of equity] has obtained jurisdiction of a cause it *301 will ordinarily dispose of all of the issues to avoid a multiplicity of suits.").
Thus, even if the parties are otherwise entitled to a jury trial on the insurer's alleged breach of contract for failure to compensate GEI and Ciba-Geigy for costs already incurred, those claims grow out of and are germane to the declaratory judgment action for specific performance. See, e.g., Brennan, supra, 145 N.J. at 302, 678 A.2d 667 (holding that doctrine of ancillary jurisdiction authorizes Family Part to adjudicate marital tort without jury when tort claim is intertwined with subject matter of divorce action). Both the requests for declaratory judgment and recovery of past remediation costs involve the interpretation of the same insurance policies on the same sets of facts. But cf. New Jersey Highway Auth. v. Renner, 18 N.J. 485, 494, 114 A.2d 555 (1955) (reasoning that since parties had proceeded on assumption that defendant's counterclaim was not incidental to plaintiff's claim for specific performance, interests of justice required that counterclaim be tried by jury). Trying the two sets of claims separately, some to a judge and others to a jury, would be a waste of judicial resources.
All parties agree that a trial before a judge is more efficient than one before a jury. Efficient judicial administration confirms the conclusion that these actions should proceed before a court sitting without a jury. Although budgetary constraints and concerns about efficiency cannot impinge on the right to a jury trial, in an era of fiscal constraint, we cannot permit the unnecessary expansion of the right to trial by jury solely to enable litigants to obtain a tactical advantage.
The mere existence of factual issues does not automatically entitle a party to a jury trial. Here, for example, a central point of dispute in both Ciba-Geigy and GEI is whether the insureds intended the environmental contamination within the meaning of the underlying policies. The right to a jury that otherwise might attach to those claims must yield to the resolution of the dominant equitable issues in a non-jury trial. In sum, the factual issues are ancillary to the insured's primary claim for equitable relief in the *302 claim for coverage. GEI, supra, 287 N.J. Super. at 396, 671 A.2d 171. Admittedly, the case for a jury trial in GEI, which involves a single site, is stronger than that in Ciba-Geigy. On balance, however, we are inclined to affirm the trial court's decision in GEI not to require a jury trial.
The orders of the Appellate Division in GEI and of the Law Division in Ciba-Geigy are affirmed.
O'HERN, J., dissenting.
I disagree that the policyholders surrendered their right to a jury trial when they initiated their declaratory judgment actions. The decision represents an abrupt departure from longstanding New Jersey law.
"[U]nder any declaratory judgment act, legal questions of fact must be tried before a jury where a demand for jury trial has been properly made." 20 Appleman, Insurance Law and Practice § 11378 (1980).
The reasoning that underlies this principle is quite simple. A declaratory judgment act merely provides a procedural device to accelerate the resolution of a dispute; the procedural device does not alter the substance of the dispute. What was a legal dispute before a declaratory judgment action remains a legal dispute after the action commences. Declaratory judgment actions do not change any substantive rights and accordingly neither enlarge nor diminish a litigant's right to a jury trial. Beacon Theatres, Inc. v. Westover, 359 U.S. 500, 79 S.Ct. 948, 3 L.Ed.2d 988 (1959); West 14th Street Commercial Corp. v. 5 West 14th Owners Corp., 815 F.2d 188 (2d Cir.), cert. denied, 484 U.S. 850, 108 S.Ct. 151, 98 L.Ed.2d 107 (1987). All that a declaratory judgment proceeding does is to afford a party "an early adjudication of an actual controversy." McDougald v. Jenson, 786 F.2d 1465, 1481 (11th Cir.), cert. denied, 479 U.S. 860, 107 S.Ct. 207, 93 L.Ed.2d 137 (1986).
*303 The right to a jury trial in a declaratory judgment action depends on whether the action is the counterpart of an action in equity or merely an inverted lawsuit. James v. Pennsylvania General Ins. Co., 349 F.2d 228 (D.C. Cir.1965). Appleman gives the example of a life insurance company that brings an action to determine that it is not liable to pay benefits on the ground that the policyholder committed suicide. The resolution of the matter is precisely the same as if the suit had been brought by the beneficiary under the contract. "By `beating the plaintiff into court,' the insurer cannot deprive that person of a right to jury trial." Appleman, supra, at § 11378.
Thus, it is universally recognized that "[i]f the issues involved would ordinarily be determined by a jury, a jury trial must be held in the declaratory judgment action, for the reason that declaratory actions may not be used to circumvent the right to jury trial." 18 Couch on Insurance, § 74:124 (2nd rev. ed. 1983). See also Annotation, Jury Trial in Action for Declaratory relief, 13 A.L.R.2d 777 (1950). "It is clear that an action by an insurance company against its putative insured, seeking a declaration that no coverage exists, is one in which a jury trial is a matter of right, since the declaratory relief action has been substituted for an action at law for breach of contract." Manneck v. Lawyers Title Ins. Corp., 28 Cal. App.4th 1294, 33 Cal. Rptr.2d 771, 774-75 (1994).
Reason and logic affirm the converse. A declaratory judgment action by a policyholder seeking a declaration that coverage exists is merely an action at law for breach of the insurance contract. A policyholder who seeks such relief is not seeking specific performance but, rather, is seeking to "terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." Tempco Elec. Heater Corp. v. Omega Eng'g, Inc., 819 F.2d 746, 749 (7th Cir.1987) (citation omitted). The basic coverage issue that gives rise to "uncertainty [and] insecurity" in each of these matters is a basic fact, whether the policyholders expected or intended the environmental injury that might result *304 from their conduct.[1] Determining an actor's intent or state of mind is a classic jury function whether in a straightforward criminal case or an insurance coverage case. See, e.g., Hambsch v. Harrsch, 256 N.J. Super. 215, 606 A.2d 879 (Law Div. 1991) (remanding for jury finding of whether defendant had "intended" to cause damage to plaintiff under indemnification exclusion of defendant's homeowner's insurance).
Unfortunately, environmental insurance coverage cases rarely arrive in the pristine condition of Appleman's example of the suicide. See, e.g., AIU Ins. Co. v. FMC Corp., 51 Cal.3d 807, 274 Cal. Rptr. 820, 799 P.2d 1253 (1990) (concerning state and federal claims for environmental contamination at seventy-nine different sites and involving injunctive relief by governmental agencies and claims for insurance coverage by policyholders). The complexity of environmental insurance coverage litigation may have misled the Court into characterizing GEI and Ciba-Geigy's actions as actions for specific performance. A coverage action, however, is only an accelerated action for breach of contract.
In multi-faceted environmental litigation, there may be circumstances in which the legal issues may be so inextricably entwined with the equitable that a court may decide under familiar principles of law that a jury trial is not authorized. Lyn-Anna Properties, Ltd. v. Harborview Dev. Corp., 145 N.J. 313, 330, 678 A.2d 683 (1996). Each case requires a measure of the relationship between the legal and equitable claims the case presents. Neither of the GEI or Ciba-Geigy cases falls into the category of overlapping issues of law and equity.
In GEI, the trial court had bifurcated the trial and separated the non-jury issues (the claims for contribution that did not exist at common law) from the state of mind issues related to the *305 coverage claims. There was no longer any basis to refuse a demand for a jury on those latter issues. See Chiacchio v. Chiacchio, 198 N.J. Super. 1, 5-6, 486 A.2d 335 (App.Div. 1984) (requiring separate jury trial for insurance claim related to matrimonial cause of action and finding declaratory judgment as to rights under insurance policy action at law).
Ciba is more problematic, because of the multiplicity of issues raised. Even so, the trial court had already separated the coverage issues for trial, while reserving to itself the application of the facts the jury found to the insurance policies.
The linchpin of the insurers' argument in Ciba is that an action to determine coverage under an insurance policy for future liability is equitable while an action on a contract for a fixed sum already paid out is legal and therefore subject to a trial by jury. At oral argument, we considered the example of two policyholders, one of which had paid out environmental remediation costs, while the other had not. To characterize the former's coverage action as "legal" and the latter's as "equitable" simply on the basis of when the damages accrued is illogical. The distinction renders obsolete longstanding law on jury trial rights in declaratory judgment actions. If an award of a finite amount that can be entered in the judgment is the predicate to a jury trial right, no party to a declaratory judgment action will be entitled to a jury trial. By definition declaratory judgment actions are anticipatory and predate determinations of amount. For example, the amount of liability for the underlying marital tort action in Chiacchio was undetermined, yet the insurance company was still entitled to a jury to resolve its liability. Chiacchio, supra, 198 N.J. Super. at 7, 486 A.2d 335. Even were the principle (no jury trial when extent of coverage is as yet undetermined) tenable, both GEI and Ciba-Geigy sought money for expenditures already paid; GEI has paid about $2 million, and Ciba-Geigy estimates its expenditures at $400 million.
The majority relies on Manetti v. Prudential Property & Casualty Insurance Co., 196 N.J. Super. 317, 482 A.2d 520 (App.Div. *306 1984), to support its reasoning that specific performance is appropriate when "the claim involves a continuing right to future benefits." Ante at 295, 693 A.2d at 852. Although not necessary to its holding that the personal injury protection (PIP) statute did not provide for a jury trial, the Manetti court expressed concern that a different holding could cause further disputes over whether individual bills were caused by the same incident. Id. at 321, 482 A.2d 520. That is hardly the case here; once the coverage issue is decided, there is little doubt remaining about causation.
In Morton International, Inc. v. General Accident Insurance Company, 134 N.J. 1, 629 A.2d 831 (1993), cert. denied, 512 U.S. 1245, 114 S.Ct. 2764, 129 L.Ed.2d 878 (1994), we affirmed the dismissal of Morton's claims for coverage without allowing a jury trial. There were no material facts in dispute about whether its predecessors in interest had "expected" to cause environmental damage. Id. at 94-95, 629 A.2d 831. In Diamond Shamrock Chemicals Company v. Aetna Casualty & Surety Company, the Appellate Division found that no jury trial was required to decide coverage issues, because the evidence of such pollution was so clear that "the trial record admit[ted] no other fair conclusion." 258 N.J. Super. 167, 211, 609 A.2d 440 (App.Div. 1992), certif. denied, 134 N.J. 481, 634 A.2d 528 (1993).
Similar conclusions about the factual issues cannot be made here, because of the questions concerning state of mind. The central issue in these cases is whether there was a knowing discharge of pollutants, a gap in the record not present in either Morton or Diamond Shamrock. Neither case supports a finding that a jury demand could be denied.
There is a recurring debate over "whether a federal court can deny a jury trial on the ground that the litigation is so complex that it is beyond the competence of the jury." 9 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 2302.1 (1973). In re U.S. Financial Securities Litigation rejected these arguments, finding that there is no complexity exception *307 to the right of trial by jury. 609 F.2d 411 (9th Cir.1979), cert. denied, 446 U.S. 929, 100 S.Ct. 1866, 64 L.Ed.2d 281 (1980). The Ninth Circuit reasoned that "[a]fter employing an historical test for almost two hundred years, it is doubtful that the Supreme Court would attempt to make such a radical departure from its prior interpretation of a constitutional provision in a footnote." Id. at 425 (discussing Ross v. Bernhard, 396 U.S. 531, 538 n. 10, 90 S.Ct. 733, 738 n. 10, 24 L.Ed.2d 729, 736 n. 10 (1970)).
As has been pointed out, "[t]here is no suggestion that the right to a jury should be curtailed in criminal cases because of complexity in cases involving, for example, organized crime or securities fraud. Why a jury is competent to decide a complex case where a person's life or liberty are at stake, but is incompetent to decide the same case where that same person's property is at stake is not clear...." Hugh H. Bownes, Should Trial by Jury Be Eliminated in Complex Cases?, 1 Risk: Issues Health and Safety 75, 79 (1990). New Jersey has routinely entrusted to juries the resolution of complicated cases. See Rubanick v. Witco Chem. Corp., 125 N.J. 421, 593 A.2d 733 (1991) (remanding for trial case involving carcinogenic properties of PCBs); Ayers v. Jackson Township, 106 N.J. 557, 525 A.2d 287 (1987) (recognizing jury verdict of long-term toxic water contamination under Tort Claims Act).
The precise issues here that a jury would be required to determine are no more difficult than in other cases. The trial would include testimony by average employees about the day-to-day operations of the sites, and whether there were established standards governing disposal of materials. The history of the Ciba site dates from the 1950s and 1960s, and application of the jury's communal sense as to what was thought about industrial discharges during that time is appropriate as a way to determine whether the pollution was "expected or intended."
It appears then that the Court is making an exception to constitutional rights in environmental insurance cases. We were *308 informed at oral argument that no other jurisdiction has denied the right to a jury trial in this type of case. I acknowledge the Court's concerns about practicality and the costs associated with this type of litigation. Ante at 299, 693 A.2d at 854. I too am practical. But constitutional principles do not give way to practicalities. Although the Court's concern is well-intended, "the Constitution recognizes higher values than speed and efficiency," and protects those values from "concern for efficiency and efficacy that may characterize praiseworthy government officials no less, and perhaps more, than mediocre ones." Stanley v. Illinois, 405 U.S. 645, 656, 92 S.Ct. 1208, 1215, 31 L.Ed.2d 551, 561 (1972). And on the point of practicality, it is not so certain that a bench trial would result in great savings of time or effort. All other states and the federal system have digested jury trials in environmental coverage cases without harm to their civil jury systems. The vast majority of cases of every type will settle under fair and disciplined case management. A fair and impartial jury's finding on a separately triable coverage issue may in fact accelerate resolution of a dispute.
Not so long ago, our Court had occasion to observe:
"The right of trial by jury is an ever-present reminder of our belief in the importance of the individual. Then Justice Rehnquist expressed it well: `The founders of our Nation considered the right of trial by jury in civil cases an important bulwark against tyranny and corruption, a safeguard too precious to be left to the whim of the sovereign, or, it might be added, to that of the judiciary.'"
[Lyn-Anna Properties, supra, 145 N.J. at 332, 678 A.2d 683 (citations omitted).]
We should not forget that reminder.
Justice STEIN joins in this opinion.
For affirmance  Chief Justice PORITZ, and Justices HANDLER, POLLOCK, GARIBALDI and COLEMAN  5.
For dissent  Justices O'HERN and STEIN  2.
NOTES
[1] There may be other coverage issues, such as the owned-property exclusion, but we are informed that the major coverage issue is whether "environmental injury was intended or expected" by the policyholders. Morton, infra, 134 N.J. at 90, 629 A.2d 831.